## 17747

James G. AUSTIN, Sr., as Administrator of the Estate of Janie Austin Fry, Appellant, v. Irene Fry SUMMERS, Individually, and Irene Fry Summers, as Executrix of the Estate of Joseph T. Fry, Respondent.

(118 S. E. (2d) 684)

*Tom S. Gettys, Esq.,* of Rock Hill, *for Appellant,*

*Messrs. Angus H. Maculay* and *Charles W. McTeer,* of Chester, *for Respondent,*

*Tom S. Gettys, Esq.,* of Rock Hill, *for Appellant, in Reply,*

February 15, 1961.

PER CURIAM.

The report of the Special Referee correctly disposes of the questions presented and is adopted as the Opinion of this Court.

STUKES, C. J., not participating.

The report of Special Referee Henry N. Obear follows:

By an Order of Reference dated May 12, 1959, this matter was referred to me as Special Referee to take the testimony and report the same to this Court with findings of fact and conclusions of law thereon, and with leave to report any special matter. Pursuant to this Order I held a reference at Chester, South Carolina, by agreement of the parties to this action, on May 27, 1959, which was attended by the attorneys for the plaintiff and the defendant and, at this reference, took such testimony as was deemed necessary. From this testimony and the evidence received, I find and report as is hereinafter set forth.

This action was commenced on or about October 15, 1958, by the filing of a summons and complaint in the Court of Common Pleas for York County, South Carolina. The plaintiff alleged in substance that he was the administrator of the estate of Janie Austin Fry and that said Janie Austin Fry was the owner of a deposit account of approximately $10,000.00 which had been placed in the First Federal Savings and Loan Association of Rock Hill, South Carolina, by Joseph T. Fry in an account entitled "Joseph T. Fry, Janie A. Fry and Irene F. Summers, as joint tenants with right of survivorship". The plaintiff alleged that there was no donative intent whereby Irene F. Summers received a share or interest in this deposit as a gift. The plaintiff further alleged that the defendant converted this deposit account to her own

use and asked the Court to require the defendant to account for said funds and that plaintiff have judgment against the defendant in the amount of $10,189.00, with interest thereon from August 11, 1956.

The defendant answered, setting up that the above mentioned account in the Savings and Loan Association was an account of joint tenancy with right of survivorship and that she, as survivor of Joseph T. Fry and Janie Austin Fry, was entitled to said funds and that Janie A. Fry had no interest therein. The defendant set up as a further defense that she had advanced certain of her funds to Janie A. Fry during her lifetime and that should Janie A. Fry be held to be entitled to any part of said account, the advancements made to her be setoff against any claim that Janie A. Fry might have in said funds.

The plaintiff filed his reply to the plea of recoupment or counterclaim set up by the defendant's answer and asked that the will of Joseph T. Fry be declared of no effect; that Joseph T. Fry be adjudged to have died intestate and that defendant be required to account for all personal property coming into her hands as executrix of the last will of Joseph T. Fry.

It is apparent from the pleadings that the principal issues raised are as follows:

A. What interest did Janie Austin Fry or Irene Fry Summers have in the joint account in the First Federal Savings and Loan Association after the death of Joseph T. Fry?

B. If plaintiff is entitled to all or any part of the joint account in the First Federal Savings and Loan Association, is the defendant entitled to setoff of moneys paid to or for the benefit of Janie A. Fry from the joint account in the Rock Hill National Bank?

### Findings of Fact

On or about September 23, 1955 there was on deposit with the First Federal Savings and Loan Association of Rock Hill, South Carolina, the sum of $10,189.96 in the

name of Joseph T. Fry and Janie Austin Fry, as joint tenants with right of survivorship. This account was closed on September 23, 1955 and on this date a new account was opened in the same institution and in the same amount, this new account being in the names of Joseph T. Fry, Janie Austin Fry and Irene Summers, as joint tenants with right of survivorship and not as tenants in common.

I find that this account was opened by said parties by the execution by all three of a deposit contract or agreement furnished by the depository and in the form identical to that contained in plaintiff's Exhibit 6 and also similar to the form set forth in defendant's answer.

I find that on August 1, 1956, Joseph T. Fry died in York County, South Carolina, leaving in full force and effect his last will and testament dated June 16, 1954, and that same was duly admitted to probate in common form by the Probate Court for York County on August 11, 1956. I find that this will was probated without challenge and that no action has been taken by any person since that date of probate to have same probated in solemn form, and that same is valid and properly probated.

I further find that on August 11, 1956, Irene Summers withdrew from the First Federal Savings and Loan Association of Rock Hill the sum of $10,497.95, same being the amount of the above mentioned joint account, plus interest, and thereafter deposited same in her name in the First Federal Savings and Loan Association of Burlington, North Carolina. (See page 79 of Minutes of Reference.)

I further find that on January 14, 1958, Janie Austin Fry made a demand in writing on Irene Summers, through her attorney and process agent, for an accounting of the money removed from the First Federal Savings and Loan Association and for a share thereof of $5,000.00 and accumulated interest thereon.

I further find that Janie Austin Fry died intestate August 8, 1958, leaving as her heirs at law her brothers, James G.

Austin, Sr., the plaintiff herein, and Daniel Austin and London Austin.

I further find that during the lifetime of Janie Austin Fry, she received certain monthly payments from Irene Summers as Executrix of the Estate of Joseph T. Fry, amounting in all to $1,800.00 and that there was also paid for the benefit of Janie Austin Fry during her lifetime by said Executrix the sum of $497.25. In addition, Irene Summers, as Executrix of Estate of Joseph T. Fry, paid the sum of $1,439.75 for the benefit of Janie Austin Fry after the date of her death.

I further find that said payments were made from money in the Rock Hill National Bank and that, at the death of Joseph T. Fry, this deposit or deposits amounted to $5,467.45.

I find that the above mentioned deposit or deposits were in said Rock Hill National Bank at the date of death of Joseph T. Fry in the name of J. T. Fry or Mrs. Janie Austin Fry or Mrs. Irene Summers and that following the death of Joseph T. Fry, said deposits were taken into the possession and under the control of Irene Summers, as Executrix of the Estate of Joseph T. Fry and as a part of the personal property of said estate and that same were thereafter used by her, as Executrix, to pay the debts and estate expenses of Joseph T. Fry, as well as to make the payments to and for the benefit of Janie Austin Fry, hereinabove mentioned.

## Conclusions of Law

The first issue to be decided in this matter is that of the ownership of the joint account in the First Federal Savings and Loan Association of Rock Hill after the death of Joseph T. Fry and, in order to make this determination, it is necessary to establish from the evidence and testimony the intention of the depositors and whether there was a contractual relationship between the parties sufficient to transfer an estate or interest in the account to either or both of the parties surviving Joseph T. Fry.

Ownership of joint accounts and the rights of the survivor or survivors are usually determined by the Courts under what is sometimes called the "gift, trust or contract theories". The gift element, or the intention of the person creating the joint deposit to make a gift is generally considered in arriving at a determination of the question of ownership of the deposits, although in the so-called contract theory cases, the gift element has been minimized and the contract under which the deposit is created is emphasized. See 7 American Jurisprudence (Banks), page 299 *et seq.;* 48 A. L. R. 189 *et seq.;* 103 A. L. R. 1124 and *Hawkins v. Thackston,* 224 S. C. 445, 79 S. E. (2d) 714.

The cases generally hold that, to constitute a deposit in the name of the depositor and another a valid gift, there must be intention to make the gift, but in some cases the title of the donee, which could not be sustained upon the ground that the deposit in the joint names of the owner and donee constituted a valid gift, has been upheld upon the theory that the owner was holding the deposit in trust for his co-depositor, the making of the joint deposit being held to constitute proof of an intention to create a trust. In some jurisdictions, the right of a co-depositor to funds deposited by the owner thereof in an account in the name of the owner and the co-depositor has been upheld on the theory that under the contract between the depositors and the bank, the co-depositor is entitled to the deposit on the death of the original owner of the funds deposited. However, even in these cases, there must be an intention on the part of the original owner of the funds to make a gift to the other joint depositors. 7 Am. Jur. (Banks), page 308; 48 A. L. R. 206.

In the case at hand, the record discloses that Joseph T. Fry, Janie Austin Fry and Irene Summers entered into a written deposit contract or agreement with the First Federal Savings and Loan Association of Rock Hill when the joint deposit in question was created on September 23, 1955. This agreement was on a deposit card furnished by the Savings

and Loan Association and this card was signed by all three parties.

While the plaintiff attempted to show throughout the testimony that the execution of the deposit agreement was not a voluntary and free act on the part, at least, of Janie Austin Fry, and there is considerable testimony as to hesitancy and reluctance on her part in this connection—there is no showing of fraud or of the use of undue influence or duress which would void her action in this respect. The evidence shows that Janie Austin Fry consulted with her brother, the plaintiff herein, who was her attorney in fact and apparently her advisor, and thereafter signed the card creating this joint deposit, although the record shows that she received no direct advice from her brother to sign or to refuse to sign. He left the matter to her judgment and she, in the exercise of her judgment, applied her signature to the card.

Further, there is no evidence in the record to show that Janie Austin Fry was not mentally capable of executing this deposit agreement, or that she was not able to understand the nature of her act.

Accordingly, I can only conclude and so find that the deposit agreement was valid and binding, not only between the parties and the First Federal Savings and Loan Association, but between the parties themselves. In this connection, the following portion of this agreement is important in the determination of the question of intent and of the contractual rights which were created between the parties and affecting the rights of any one of the joint depositors to the deposit:

"* * * It is agreed by the signatory parties with each other and by the parties with you (First Federal Savings and Loan Association) that any funds placed or added to the account by any one of the parties is and should be conclusively intended to be a gift at that time of such funds to the other signatory party or parties to the extent of his or their pro rata interest in the account."

Throughout the reference the plaintiff has contended that, irrespective of the above agreement, the addition of the name of Irene Summers to the joint account of Joseph T. Fry and Janie Austin Fry was made merely for purposes of convenience and was without donative intent of any kind and, therefore, no interest or title whatsoever passed to Irene Summers in the joint account in question. However, the evidence shows that the account in the First Federal Savings and Loan Association was not regularly used for expense money by Joseph T. Fry or his wife. There is no showing of any withdrawals therefrom before September 23, 1955 and none between that date and the death of Joseph T. Fry. The evidence does show, however, that about nine months before this joint account was created with the name of Irene Summers thereon, Joseph T. Fry had changed his will to such an extent that under its terms his daughter would share in his estate along with his wife, indicating an intent or desire on his part at that time for his daughter to be the recipient of a portion of his property after his death. In this connection it is important to note that the testimony shows the money making up this Savings and Loan Association account was entirely his originally. It is not improbable to conclude from these facts that Joseph T. Fry desired his daughter to receive a share of the Savings and Loan account which would not have passed to her without the addition of her name thereto.

In view of this I can only conclude, and so find that the name of Irene Summers was placed on the First Federal Savings and Loan Association account, not for convenience, but with a donative intent and, by reason of this and the language of the deposit contract, Janie Austin Fry and Irene Summers took said account, as joint owners thereof, with right of survivorship upon the death of Joseph T. Fry. See *Hawkins v. Thackston,* 224 S. C. 445, 79 S. E. (2d) 714.

As a joint owner of this account, did Irene Summers have a right to withdraw the entire account on August 11, 1956 and to deposit same in her individual account, and did this amount to a conversion of property of Janie Austin Fry? It is clear that both Janie Austin Fry and Irene Summers had substantial and equal interests in this account following the death of Joseph T. Fry. Neither had contributed the money making up this account which, under several decisions, gives the contributing party greater rights of withdrawal without liability. See 161 A. L. R. 75. When it has been established that both parties have substantial interests in a joint account, it follows that neither can appropriate the whole without liability to the other. 7 Am. Jur. (Banks) 1959 Supplement, page 39. Also 161 A. L. R. at pages 74-75.

The contract of deposit, referred to above, undoubtedly authorized Irene Summers to withdraw the entire amount of the account without liability on the part of the Savings and Loan Association to the other party and this is also sanctioned by statute, as set forth in Section 8-602 of the 1952 Code of Laws of South Carolina. But the power to withdraw is one thing and the power or right to destroy a co-interest is another. The removal of this account in full by Irene Summers and redeposit of same in her own name in North Carolina, clearly placed the money, or any part of it, outside of the control and possession of Janie Austin Fry and beyond her reach. As a joint tenant having a substantial interest in this account, Janie Austin Fry could have terminated the account by a withdrawal of one-half thereof, or by a voluntary partition or agreement with her co-owner. See 14 Am. Jur. (Cotenancy) page 86. She was entitled to withdraw one-half of the account without becoming liable in any way to Irene Summers and Irene Summers could have withdrawn her half share in like manner. Had Janie Austin Fry taken no action to sever this account, or to claim any part thereof during her lifetime, it cannot be questioned but that Irene Summers, as the survivor, would have taken the entire

account on the death of Janie Austin Fry. However, the record shows that Janie Austin Fry did make an effort to secure her part of this account during her life, having made written demand on Irene Summers for an accounting of the money removed from the joint Savings and Loan Association account and for $5,000.00 of this account. Had Janie Austin Fry lived, she could have enforced this demand by a partition action or, if the money had not been removed from the joint account, by merely withdrawing her share. Clearly, she wanted her share and was rightfully entitled to same, but was prevented from obtaining same by the action of Irene Summers in removing the money to an individual account in another State.

I therefore conclude and so find, that the action of Irene Summers in withdrawing the entire account from the First Federal Savings and Loan account and placing same beyond the reach of Janie Austin Fry and her further failure to pay to Janie Austin Fry one-half of this account, after demand was made upon her, amounts to a conversion of the share of Janie Austin Fry in this account. In effect, her action amounted to an appropriation of the entire account. Janie Austin Fry was entitled to one-half of the account of $10,497.95, or the sum of $5,248.97, with interest thereon from August 11, 1956.

The next issue to be decided in this matter is that of the right of the defendant to claim a set off or recoupment for money expended by her to and for the benefit of Janie Austin Fry against any sum she might be required to pay to the plaintiff.

The testimony and exhibits establish the fact that, at the date of the death of Joseph T. Fry, there was on deposit in the Rock Hill National Bank in a savings account the sum of $1,328.67 and in a checking account the sum of $4,153.88 or a total of $5,482.55 (See plaintiff's Exhibit No. 8). The evidence shows that this money was originally owned by Joseph T. Fry, but on September 23, 1955 the account was

changed to include the name of Irene Summers. At the date of the death of Joseph T. Fry the accounts were in the name of J. T. Fry or Mrs. Janie Austin Fry or Mrs. Irene Summers, but thereafter were changed to Mrs. Janie Austin Fry or Mrs. Irene Summers. It is undisputed that, as Executrix of the will of Joseph T. Fry, Irene Summers returned the above accounts as property of the estate of Joseph T. Fry, same appearing on both the Petition to Prove the Will and in the Appraisement, although in both the total of the accounts was shown to be $5,467.45, and thereafter used same to pay debts, probate costs and administrative expenses of this estate, as well as funeral expenses of Joseph T. Fry, amounting in all to $1,771.67. She also used this money to the extent of $1,800.00 to make monthly payments to Mrs. Janie Austin Fry at the rate of $75.00 per month from August 18, 1956 to June 30, 1958. In addition, Irene Summers as Executrix of the Estate of Joseph T. Fry, paid from this fund in various amounts a total of $1,937.00 for the benefit of Janie Austin Fry. Of the last mentioned amount, $1,439.75 was paid after the death of Janie Austin Fry in settlement of her debts and funeral expense. (See first and final annual returns of Irene Summers as Executrix of Estate of Joseph T. Fry and checks supporting same, being defendant's exhibits 4, 5 and 8.) Note: Checks numbered 3, bank charge, 6, 7, 8, 9, 11, 13, 14, 15, 18, 21, 22, 25, 26, 31 and 58 cover items paid for benefit of estate of Joseph T. Fry. ($1,771.67.) Checks numbered 24, 28, 34, 35, 36, 37, 39, 40, 42, 43, 44, 46, 48, 49, 50, 54, 55, and 56 cover items paid during lifetime of Janie Austin Fry, other than the monthly payments, of which there are 24 at $75.00 shown on the returns. ($493.65.) Checks numbered 59, 60, 62, 63 and 64 and $391.75 unnumbered check, cover items paid by the Executrix of Estate of Joseph T. Fry for benefit of Janie Austin Fry after her death. ($1,439.75.)

The record shows that the accounts in the Rock Hill National Bank mentioned above were established in the man-

ner indicated by the three parties signing a deposit card containing among other language, the following:

"Depositor hereby agrees that funds deposited in this account are owned jointly by the undersigned, subject to withdrawal by either or both, and that at the death of either, the survivor shall take absolute and single ownership of the net balance then remaining." (See plaintiff's Exhibit No. 10.)

In accordance with the applicable law and the findings and conclusions in connection with the ownership of the joint account in the First Federal Savings and Loan Association, it would ordinarily be determined that this account belonged jointly and equally to Janie Austin Fry and Irene Summers immediately after the death of Joseph T. Fry. If, however, there was no claim to same and no withdrawals therefrom by Janie Austin Fry during her lifetime, it became the sole property of the survivor, Irene Summers on the death of Janie A. Fry. The record does not show any claim having been made by Janie Austin Fry to this fund during her lifetime, as was the case with the deposit in the First Federal Savings and Loan Association, nor did she withdraw or attempt to withdraw any money therefrom during her life. However, the fact that this fund was placed with the assets of the estate of Joseph T. Fry by one of the co-owners and benefits were directly received therefrom in the form of support and maintenance payments which were received by Janie Austin Fry might well have influenced her attitude and actions relating thereto. She acquiesced in the use of these funds as estate money and further recognized that these accounts belonged to the estate of her husband by seeking court assistance to obtain increased benefit payments therefrom. I conclude from this that Janie Austin Fry would have been estopped during her lifetime by her actions relative to this money from claiming an interest as a joint depositor in the accounts in the Rock Hill National Bank, and that her heirs, being in privity with her, are bound by an estoppel which was binding upon her. 19 Am. Jur. (Estoppel) page 811.

It is also clear that the defendant has consistently treated this account as property of Joseph T. Fry and as an asset of his estate. She waived any claim or interest as a joint depositor in Rock Hill National Bank accounts after the death of Joseph T. Fry and maintained this position until after the death of Janie Austin Fry. No personal withdrawals were made therefrom and all payments made therefrom were drawn by her as Executrix of the estate of Joseph T. Fry. I can only conclude that Irene Summers voluntarily and willingly transferred any interest she might personally have had in this joint account to the estate of Joseph T. Fry and that these funds in the Rock Hill National Bank became actual funds of the estate by the action of the co-owners after the death of Joseph T. Fry.

I find no merit in plaintiff's contention that the will of Joseph T. Fry is invalid and not properly probated. The record shows that the will was properly executed, attested and was duly admitted to probate in common form on August 11, 1956, by the Judge of Probate for York County. As required by Section 19-225 of the 1952 Code of Laws of South Carolina, challenge to this probate must be made within prescribed time by seeking to have same probated in due form of law. This was not done. See *Davis v. Davis,* 214 S. C. 247, 52 S. E. (2d) 192, at page 196.

The defendant claims that under the provisions of the will of Joseph T. Fry, Janie Austin Fry was a mere life tenant in the property of the estate and that she, as the daughter of the testator, was the remainderman and entitled to the entire property of the testator, subject only to payment of income and interest from this property to the life tenant. Accordingly, it is defendant's contention that payments made from the funds of the estate, that is, the corpus of the estate, to and for the benefit of Janie Austin Fry, were actually paid from property to which she, as remainderman, was entitled and that she, in effect, used her own money to support Janie Austin Fry. This is the basis for her demand to set-off.

I have carefully considered the will of Joseph T. Fry and I am of the opinion and so conclude and find that it is the intention of the testator to grant to his wife, Janie Austin Fry, something more than a mere life estate in his property. His use of the words "to have the full use and enjoyment thereof for her maintenance and support and pleasure" implies an intent that his wife have enough of his estate to provide for her maintenance, support and pleasure. It is obvious that this could not be accomplished on the income and interest from his property alone.

The intention of the testator is not changed by his use of precatory words in the second paragraph of his will. Words of this nature, which express desire rather than any mandatory direction, are to be construed in accordance with testator's intention. 57 Am. Jur. (Wills) page 771. I consider that the testator's intention is shown by the entire instrument and not by either paragraph examined alone.

Since Janie Austin Fry was entitled to "maintenance and support" from the corpus of the estate and, as I have determined hereinabove, the accounts in the Rock Hill National Bank became estate funds, payments made therefrom after the death of Joseph T. Fry to and for the benefit of Janie Austin Fry during her lifetime, were from funds of the estate of Joseph T. Fry and not from individual or personal funds of Irene Summers, or from money to which she was exclusively entitled at that time as remainderman. Accordingly, I conclude that Irene Summers individually made no payments to or for the benefit of Janie Austin Fry during the lifetime of the latter and is therefore not entitled to set off any part of these payments against the share of the account formerly in the First Federal Savings and Loan Association of Rock Hill, which I have concluded is due to the plaintiff in this action.

However, certain payments in the amount of $1,439-.75 were made by Irene Summers as Executrix of the Estate of Joseph T. Fry for the benefit of Janie T.

Fry after the death of the latter from estate funds of Joseph T. Fry, deceased. These payments covered funeral expenses and debts owed by Janie Austin Fry. There was no legal obligation created by the will of Joseph T. Fry requiring the Executrix to make these payments and such payments directly benefit the heirs of Janie Austin Fry, upon whom these obligations would normally have rested. By making these payments the amount which Irene Summers would have received as remainderman after the life estate created by the will of Joseph T. Fry was decreased by the total of such payments. Thus, in effect, Irene Summers paid for the benefit of the estate of Janie Austin Fry the sum of $1,439.75. I therefore conclude and so find that she is entitled to set off this amount, with interest from August 8, 1958, against the amount which the plaintiff may be entitled to recover from the defendant.

I recommend that this Court do enter its order requiring payment by the defendant in this action of the amount herein determined to be due to the plaintiff, less that amount which has been established herein to be due by the plaintiff, representing the estate of Janie Austin Fry, to the defendant. I further recommend that Irene Summers, as Executrix of the Estate of Joseph T. Fry, be directed by the Court to make her final accounting to the Probate Court of York County and that she be allowed to be discharged as such Executrix.