224 So.2d 338 (1969)
Robert McCARTHY, Appellant,
v.
LITTLE RIVER BANK AND TRUST COMPANY et al., Appellees.
No. 69-314.
District Court of Appeal of Florida. Third District.
June 17, 1969.
*339 Carey, Dwyer, Austin, Cole & Selwood, and Edward A. Perse, Miami, for appellant.
Dixon, Bradford, Williams, McKay & Kimbrell, and James F. Crowder, Jr., Miami, for appellees.
Before PEARSON, BARKDULL and SWANN, JJ.
SWANN, Judge.
Robert McCarthy takes this interlocutory appeal from a Circuit Court order which denied his motion to quash service of process served under Fla. Stat. § 48.181, F.S.A.
Appellant, Robert McCarthy, was and is a citizen and resident of the State of Minnesota. His uncle, Sidney J. McCarthy, resided in Miami, Florida and was engaged in the business of selling heavy construction equipment in this area. Uncle Sidney had one other blood relative who was alleged to be a thirty-two year old mentally defective son who had been confined in a state hospital in Florida since 1952.
The following facts are taken in part from the brief of Robert McCarthy:
"In early August 1967, UNCLE entered the Hialeah Hospital for treatment of a serious illness and gave McCARTHY'S mother's name and telephone number to the hospital as next of kin.
On August 8, 1967, the hospital notified McCARTHY that UNCLE had died that day. McCARTHY felt that since he was UNCLE'S only competent blood relative and from events which had transpired within the family that he would be a prime beneficiary of his UNCLE'S estate. When McCARTHY heard of UNCLE'S death he called his attorney in Minnesota who recommended that should the need arise he contact a Miami attorney * * *.
On August 9, 1967, thinking he was the only one qualified to do so, McCARTHY travelled to Miami, Florida to make arrangements for UNCLE'S funeral and take care of his estate.
McCARTHY arrived in Miami early on the evening of August 9, 1967 and checked *340 into a motel. He then went to the funeral home which gave him keys to UNCLE'S house and car. While there McCARTHY made arrangements for UNCLE'S funeral and burial assuming full responsibility for expenses approximating $1800.00 and signing a note in that amount. He also paid for his UNCLE'S tombstone. He anticipated that UNCLE had enough money to cover these expenses and that he would be able to repay himself from any legacy or from his UNCLE'S estate. He then went to the hospital and paid UNCLE'S hospital bill.
Late in the evening of August 9, 1967, after visiting the hospital and funeral home, McCARTHY went to UNCLE'S home to gather up UNCLE'S personal effects and look for a will. He found and appropriated numerous papers, a key to a safety deposit box in SPRINGS BANK, some jewelry, and a wristwatch. The house was in a state of complete disarray. After his search he left in his UNCLE'S automobile.
Since McCARTHY found UNCLE'S affairs in a disordered state and could not find a will he called attorney * * * that same evening and made arrangements to speak to him the next day, August 10, 1967.
On August 10, 1967, McCARTHY went to SPRINGS BANK, showed the woman at the safety deposit vault UNCLE'S key, and was admitted to the safety deposit box after signing UNCLE'S name. The box contained some papers, a number of bankbooks from different banks all of which had $10,000.00 deposits noted therein, and a savings certificate. There was nothing else in the box, no envelopes, no keys, no jewelry, no cash.
On the afternoon of August 10, 1967, McCARTHY made an abortive attempt to close out one of the $10,000.00 savings accounts, and cashed several checks made out to his UNCLE by signing his UNCLE'S name."
In addition to these facts the record reflects that McCarthy employed and paid the attorney in Florida to represent him in regard to his uncle's estate and will. After the will was found it was discovered that Robert McCarthy was not named therein. The assets of the uncle had been placed in trust for the life of his retarded son with the remainder to go to the American Cancer Society upon the death of the son. Robert McCarthy also discussed with the local attorney the possibility and probability of contesting the will in order to determine if it could be set aside.
McCarthy took possession of checks, savings account books, deeds and abstracts from his uncle's home. For many years McCarthy maintained an account of about $5.00 in a savings account in the Hialeah-Miami Springs Bank. It is admitted that he received and took possession of $117.00 in cash which belonged to his uncle, from the hospital.
McCarthy personally visited and examined the equipment lot in Florida which belonged to his uncle and found thereon a drag line and a bulldozer. He visited and examined another house and lot belonging to his uncle in Dade County, Florida.
The trustee named in the will, the Little River Bank and Trust Company, sued the Hialeah-Miami Springs Bank alleging that money was wrongfully removed from the safety deposit box of the uncle and that the Hialeah-Miami Springs Bank was liable for such loss. The Hialeah-Miami Springs Bank filed a third party complaint against Robert McCarthy seeking indemnity against any damage it might be required to pay and served process on him under Fla. Stat. § 48.181, F.S.A. He moved to quash the purported service of process claiming that he was not engaged in a business or business venture in Florida.
Under the facts of this case, we believe that the rule stated in William E. Strasser Construction Corp. v. Linn, Fla. 1957, 97 So.2d 458, 460 applies. The Supreme Court of Florida therein adopted the view *341 expressed in the Restatement of Law, "Judgments", § 22, and stated:

"What constitutes doing business. In the case of an individual, as in the case of partnerships or other unincorporated associations and in the case of corporations doing business is doing a series of similar acts for the purpose of thereby realizing pecuniary benefit, or otherwise accomplishing an object, or doing a single act for such purpose with the intention of thereby initiating a series of such acts." (Emphasis added)
* * *
There is no question that the provision of Fla. Stat. § 48.181, F.S.A. applies to individuals. The question of whether the individual, Robert McCarthy was engaged in or carrying on a business venture within the State of Florida should be resolved on the basis of the facts revealed by the record in this particular case. See Strasser, supra. We do not believe that the term "business venture" includes or applies exclusively to commercial transactions for benefit. See Kochenthal v. Kochenthal, 28 A.D.2d 117, 282 N.Y.S.2d 36 (2nd Dept., 1967); Van Wagenberg v. Van Wagenberg, 241 Md. 154, 215 A.2d 812 (1965); San Juan Hotel Corp. v. Lefkowitz, 277 F. Supp. 28 (D.P.R. 1967). It is admitted by McCarthy that he was engaged in a course of conduct and acts in Florida as a result of his expectation of being named and receiving benefits under his uncle's will. It is clear that his acts in Florida were done for the purpose of realizing a pecuniary benefit, although no actual pecuniary benefit ever resulted to him.
McCarthy apparently engaged in several different acts in Florida which were done for the purpose of realizing a pecuniary benefit or otherwise accomplishing an object. He personally hired an attorney, signed notes, endorsed checks, paid the balance of his uncle's account at the hospital, took possession of the personal papers and property of his uncle, examined the uncle's business property and real estate, demanded access and obtained the contents of his uncle's safety deposit box by signing his uncle's name, and took possession of his uncle's car, watch and ring. We conclude that he was engaged in a series of similar acts done for the purpose of realizing a pecuniary benefit within the State of Florida or otherwise accomplishing an object and that service of process upon him under Fla. Stat. § 48.181, F.S.A. was proper.
For these reasons the order which denied his Motion to Quash Service of Process is hereby affirmed.