446 So.2d 169 (1984)
Josephine B. WIGGINS, Etc., Appellant/Cross-Appellee,
v.
Olivia M. PARSON, Appellee, and
Lillie H. Dudley and Lecil O. Howell, Appellees/Cross-Appellants.
Nos. 82-1008, 82-1430.
District Court of Appeal of Florida, Fifth District.
February 2, 1984.
Rehearing Denied March 6, 1984.
*170 T. Michael Woods, Orlando, for appellant/cross-appellee.
Robert O. Marks, of Bornstein, Petree, Cooper & Marks, Orlando, for appellee Parson.
R. Barry Morgan, of Lawrence, Griffin & Landis, Orlando, for appellees/cross-appellants.
SHARP, Judge.
The issue in this case is whether the complete withdrawal of funds from a jointly-owned federal credit union account by one owner, who under the contract with the credit union[1] and under our state's applicable law,[2] had the right and the power to make withdrawals, terminated or severed the joint tenancy nature of the bank account so as to destroy the right of survivorship. The right of survivorship is an essential element of joint tenancy property. We think the better view is that a withdrawal and placement of the funds beyond the control of the other joint tenant in such a manner as to be inconsistent with continued joint possession and ownership severs the right of survivorship. The lower court ruled appellant failed to state a cause of action against appellees in this case because the claimant, Eva Broadhead, did not survive after the withdrawal was made. We reverse.
The pleadings disclose that in 1975 Effie Cooper used her funds to open a joint share account with right of survivorship in her name and her sister's, Eva Broadhead. In May of 1977 Cooper added the names of her sister, Olivia Parson and her brother, Lecil Howell. In November 1977, Cooper removed her name from the account, leaving as joint owners Parson, Howell, and Broadhead. Soon thereafter Parson withdrew all of the funds in the account and divided them into three equal parts. She *171 kept one third and gave one third to Howell and one third to Lillie Dudley, another sister. There is no allegation Broadhead knew about the withdrawal, or that she agreed to the distribution of the funds to her siblings.
Cooper died in January 1978, and in July 1978, Broadhead died. The probate court administering Cooper's estate ruled that Cooper made a complete and valid gift to her siblings by opening the joint account and then removing her name from it. Appellant is Broadhead's personal representative, seeking to recover one third of the funds from Parson, Howell and Dudley. They admit they are currently holding the withdrawn funds.
This is a case of first impression in Florida, and we should look to other jurisdictions in determining how to best resolve it. The law on joint bank accounts is far from uniform, and as one judge described it, "the law relating to it has been in a state of morass, many of the cases which arise being treated very much on an ad hoc basis."[3]
Some of the confusion in the case law arises from the fact that the key point in the decisions is whether there was a completed inter vivos gift of the joint interest in the bank account at the time the suit arose or before the joint owner died.[4] If it was a "convenience" account, or one where no inter vivos gift was intended, then the depositor-owner may withdraw the whole account and destroy the other joint owner's survivorship rights. See McGee v. St. Francois County Savings and Loan Association, 559 S.W.2d 184 (Mo. 1977); Carroll v. Hahn, 498 S.W.2d 602 (Mo. App. 1973). But if no present gift was intended, then the non-owner-depositor may not withdraw the whole of the account; and if he does so without the owner's consent, he is accountable or liable to the owner for all of the funds withdrawn. See Constance v. Constance, 366 So.2d 804 (Fla. 3d DCA), cert. denied, 376 So.2d 70 (Fla. 1979). However, in this case it is clearly established that the owner-depositor of the credit union account, Cooper, made a completed inter vivos gift of the funds to her three siblings, Broadhead, Parson and Howell, when she removed her own name from the joint account in 1977.
Where there is a real joint tenancy account, and one joint tenant withdraws the full amount of the account or more than his moiety, and a death occurs before suit is brought to settle rights to the funds, the view espoused by most of the New York state courts is that the survivor takes all, whether the survivor happens to be the wrongful withdrawer, or the joint owner who did not withdraw the funds.[5] Other jurisdictions also follow this view. See Gatewood v. Griffin, 549 P.2d 829 (Okl. App. 1976); State v. Gralewski's Estate, 176 Or. 448, 159 P.2d 211 (1945).
The rationale appears to be that one joint owner cannot rightfully withdraw more than his moiety, and if he does so, his act of withdrawal is a nullity, which does not destroy the right of survivorship. Will of Filfiley, 63 Misc.2d 824, 313 N.Y.S.2d 793 (N.Y.Surrogate's Ct. 1970), aff'd, 43 A.D.2d 981, 353 N.Y.S.2d 400 (1974). Strangely, these same jurisdictions hold that a joint owner may withdraw his share and destroy the other's survivorship rights in it.[6]
This view poses complications and problems. For example, if a joint tenant makes a series of withdrawals limited each time to his fractional interest, will he destroy the right of survivorship in the funds withdrawn? And, if survivorship continues in the funds, how far and how long does it stretch to reach the various funds and properties it may be later exchanged for or invested in? And in this case, will the *172 survivor of the three original siblings, Parson or Howell, be able to claim the share of the account presently in Dudley's, Howell's or Parson's possession? It seems anomalous to say Broadhead lost her right to her share because she did not survive Parson and Howell, but Parson and Howell do not also hold their shares subject to the right of survivorship in the other. Finding a logical end to the floating right of survivorship is a problem with the New York rule.
A better view is that withdrawal of jointly-owned funds by a joint owner and placement of the funds in other persons' names, terminates the joint tenancy nature of the property and severs the right of survivorship as to the funds withdrawn. See Wright v. Commercial and Savings Bank, 51 Md. App. 398, 445 A.2d 30 (1982); Rose v. Hooper, 175 Neb. 645, 122 N.W.2d 753 (1963); In Re Estate of Ogier, 175 Neb. 883, 125 N.W.2d 68 (1963); Goc v. Goc, 134 N.J. Eq. 61, 33 A.2d 870 (1943); Hoffman v. Vetter, 117 Ohio App. 233, 24 Ohio Ops.2d, 192 N.E.2d 249 (1961); In Re Estate of Beniger, 449 Pa. 373, 296 A.2d 773 (1972); In Re Estate of Carson, 431 Pa. 311, 245 A.2d 859 (1968); Austin v. Summers, 237 S.C. 613, 118 S.E.2d 684 (1961). The withdrawing joint tenant is liable and accountable to the other joint owner for that person's share, but the intervening death of either does not alter the outcome. See Goc; In Re Manfredini's Estate, 13 N.J. Super. 258, 80 A.2d 445 (1951).
The rationale for the view that withdrawal severs the right of survivorship is patterned after the common law rules worked out for joint ownership of real property, although admittedly they are not strictly and fully applicable to intangibles such as a bank account. In the context of real property interests, there is nothing sacrosanct about the right of survivorship in joint tenancy. The act of one joint owner may, without the other's consent, transform the ownership from joint tenancy to tenancy in common, thereby destroying the survivorship component. 48A C.J.S. Joint Tenancy §§ 16, 17, 18 (1981).
An act which destroys one of the unities of the joint ownership is generally held to transform the ownership to tenancy in common.[7] In the context of joint accounts the withdrawal of all or some funds from the joint account, and the placement of such funds in an account in different names or in other property the other joint owner has no power or right of control over, destroys the unity of time, title, possession and interest. In Re Estate of Ogier. That is what happened in this case. The withdrawal severed the joint tenancy ownership of the account and transformed it into funds owned as tenants in common. See In Re Estate of Carson; Goc. Thereafter, survivorship was irrelevant in determining Broadhead's right to her moiety.
Although we have no direct Florida precedent to follow in this case regarding severance of the joint tenancy nature of a joint account upon withdrawal by one joint owner, the joint tenancy analysis is consistent with the case law in this state. Ownership of joint bank accounts with the right of survivorship is viewed as a kind of joint tenancy property interest. See Spark v. Canny, 88 So.2d 307 (Fla. 1956); Crawford v. McGraw, 61 So.2d 484 (Fla. 1952); Graham v. Ducote Federal Credit Union, 213 So.2d 603 (Fla. 1st DCA 1968); Maier v. Bean, 189 So.2d 380 (Fla. 2d DCA 1966). Where one joint tenant has the right and power, under the applicable statute and the contract documents which establish the account, to withdraw all or part of the funds, and it is established that there was a true joint ownership, Florida appellate decisions have held that severance and destruction of the right of survivorship occurs.
In Cape Coral Bank v. Kinney, 321 So.2d 597 (Fla. 2d DCA 1975), Mrs. Arrowood and Mrs. Kinney opened a joint ownership bank account, with right of survivorship. Mrs. Arrowood's guardian sought to withdraw the funds, and the federal savings and loan association tendered the *173 funds into the court registry. Then Mrs. Arrowood died. The court held that the withdrawal severed Mrs. Kinney's survivorship rights. This case was modified by a later opinion which held that a guardian of an incompetent had no right or power to withdraw joint bank account funds unless they are needed to care for the ward. Drozinski v. Straub, 383 So.2d 301 (Fla. 2d DCA 1980). However, Drozinski has no bearing on this case because any of the siblings had the right and power to withdraw the funds from the joint account.
Similarly, in Simpson v. Schoenemann, 263 So.2d 854 (Fla. 1st DCA 1972), one joint owner of several jointly-owned bank accounts withdrew all of the funds and established joint accounts with a third person. The withdrawer then died. The court held that the other joint tenant had no survivorship rights to the funds. In the Simpson case the original joint tenants were husband and wife, but the court said it was immaterial whether they held the account as tenants by the entireties or as joint tenants. Some older cases held such husband-wife joint accounts cannot be severed by the act of one of the parties alone during the marriage, analogous to the rules applicable to interests in real property held by spouses as tenants by the entireties. See Lerner v. Lerner, 113 So.2d 212 (Fla. 2d DCA 1959). But in the present case, Lerner would make no difference because the joint owners were siblings, not spouses.
For the reasons stated, we reverse the trial judge's dismissal of Broadhead's executor's suit against Parson, Howell and Dudley for failure to state a cause of action. Broadhead did not have to survive the other joint owners after the withdrawal was complete. She had the right, which her executor may now enforce, to recover her share of the funds to the extent they can be traced.[8] All parties admit that the funds are presently held by Parson, Howell and Dudley. Further, we affirm the ruling of the trial court on the cross appeal, that it obtained personal jurisdiction over Dudley and Howell. See DeVaney v. Rumsch, 228 So.2d 904 (Fla. 1969); McCarthy v. Little River Bank and Trust Company, 224 So.2d 338 (Fla. 3d DCA 1969).
REVERSED AND REMANDED.
COBB, J., concurs.
COWART, J., dissents with opinion.
COWART, Judge, dissenting:
This case involves the question of whether the withdrawal by one joint tenant of all funds in a joint account held with the right of survivorship without the knowledge or assent of another joint tenant is effective alone to destroy the incident of survivorship as to the non-assenting joint tenant.
In 1975 Effie Cooper established, in a federal credit union, a joint share account with right of survivorship in the names of Effie Cooper and her sister, Eva Broadhead. In May of 1977, Cooper added to the account the names of her sister Olivia Parson, and her brother Lecil Howell. In November 1977, Cooper removed her name from the account leaving Parson, Howell and Broadhead as joint tenants with right of survivorship. Soon thereafter Parson withdrew the entire account and she and Howell divided it into three equal shares and distributed one-third share each to Parson, Howell and Lillie Dudley, another sister. In January 1978, Cooper died and in July 1978 Broadhead died. In September 1978 the probate court administering Cooper's estate held that the joint account constituted a completed gift from Cooper to the joint tenants (Parson, Howell and Broadhead). Thereafter appellant, as personal representative of the Estate of Eva Broadhead brought this action on theories of constructive trust and restitution against Parson, Howell and Dudley to recover one-third of the funds withdrawn from the joint account. From an order dismissing with prejudice appellant's third amended complaint for failure to state a *174 cause of action this appeal was taken. I would affirm.
As to Broadhead who did not assent to the withdrawal of the funds in the joint account, it was wrongful[1] for Parson to withdraw the entire balance in the gifted joint account and to distribute the proceeds to Parson, Howell and Lillie Dudley. During her lifetime Broadhead had a cause of action against Parson, Howell and Lillie Dudley to have the withdrawn funds followed and to have them restored to their former status as a joint account with right of survivorship between Parson, Howell and herself (Broadhead). The joint tenants collectively also had the right to agree that the funds in the joint account would be withdrawn and disbursed as the parties might have agreed. Also, any tenant had a legal right to petition a court to cause a partition and distribution of the jointly held fund thereby terminating their survivorship aspect. Broadhead took no such action during her lifetime and those rights did not survive her. This dissent would hold that Parson's act in withdrawing the funds from the joint account, in which Howell and Dudley participated without Broadhead's knowledge or consent, was not legally successful and effective to terminate the joint tenancy.[2] Parson's withdrawal should be viewed as only changing the form in which the funds were held.[3] It *175 should be held that in equity the recipients (Parson, Howell and Dudley) held the withdrawn funds in trust for the true beneficial owners, Parson, Howell and Broadhead as tenants with right of survivorship. Therefore, when Broadhead died her interest as a joint tenant with right of survivorship terminated and the surviving tenants, Parson and Howell, were entitled to the whole not because of the earlier withdrawal of funds from the joint account was effective to terminate the right of survivorship which was an incident of Cooper's gift of the joint account, but because Broadhead's interest terminated by virtue of her death in accordance with the original intent of the donor in establishing a joint tenancy with right of survivorship. The view in this dissent respects the donor's intent to make a gift in the form of a joint tenancy by protecting the survivorship feature of such a gift, and more importantly, prevents one unhealthy and unscrupulous joint tenant from defeating the donor's intent by withdrawing the joint funds in order to intentionally and wrongfully terminate the joint tenancy and the survivorship rights of the other donee tenants contrary to the intent of the donor that the other donee-tenants succeed to the funds rather than the estate of the donee-tenant who first dies. The majority view will, in another case, permit a wrongdoer to benefit from his wrong and this case will be logically indistinguishable then. Appellant, as Broadhead's personal representative, should have no cause of action to recover anything after Broadhead's death before that of the other donee-tenants and the trial court's order dismissing her third amended complaint should be affirmed.
NOTES
[1] The Joint Share Account Agreement in this case provides:

The Eglin Federal Credit Union is hereby authorized to recognize any of the signatures subscribed hereto in the payment of funds or the transaction of any business for this account. The joint owners of this account hereby agree with each other and with said Credit Union that all sums now paid in on shares, or heretofore or hereafter paid in on shares by any or all of said joint owners to their credit as such joint owners with all accumulations thereon, are and shall be owned by them jointly, with right of survivorship and be subject to the withdrawal or receipt of any of them, and payment to any of them or the survivor or survivors shall be valid and discharge said Credit Union from any liability for such payment.
Any or all of said joint owners may pledge all or any part of the shares in this account as collateral security to a loan or loans.
[2] Section 657.035(1), Florida Statutes (1981), provides in part:

Credit union shares and deposits, or any part thereof... made in the names of two or more persons, payable to either, or payable to either or the survivor, and shares or deposits made to an account standing in the names of two or more persons payable to either, or payable to either or the survivor, may be paid to, or pursuant to the order of, either or any of such persons ... and the order for payment of any such person, or the receipt or acquittance of the person so paid, shall be a valid and sufficient release and discharge to the credit union for any payment so made.
[3] Kleinburg v. Heller, 38 N.Y.2d 836, 345 N.E.2d 592, 382 N.Y.S.2d 49 (1976) (Fuchsberg, J., concurring).
[4] Cf. Chase Fed. Sav. & Loan Ass'n. v. Sullivan, 127 So.2d 112 (Fla. 1960).
[5] Will of Filfiley, 63 Misc.2d 824, 313 N.Y.S.2d 793 (N.Y.Surrogate's Ct. 1970), aff'd, 43 A.D.2d 981, 353 N.Y.S.2d 400 (1974).
[6] Manta v. Manta, 56 A.D.2d 624, 391 N.Y.S.2d 680 (1977).
[7] See Weise v. Kizer, 435 So.2d 381 (Fla. 5th DCA 1983); In Re Estate of Ogier, 175 Neb. 883, 175 N.W.2d 68 (1963); 48A C.J.S. Joint Tenancy § 16 (1981).
[8] Goc v. Goc, 134 N.J. Eq. 61, 33 A.2d 870 (1943); In Re Manfredini's Estate, 13 N.J. Super. 258, 80 A.2d 445 (1951).
[1] The word "wrongful" must be qualified. As to the federal depository credit union the withdrawal was not wrongful because under the depository agreement and statutory authority (see Doran v. Gainer, 443 So.2d 473 (Fla. 5th DCA 1984)) any one joint tenant was authorized to make the withdrawal. Although legally Cooper had made a completed gift of the joint account when she took her name off of the account in November 1977, nevertheless Parson and Howell recognized a moral right in Cooper to direct control of the funds and Parson states she acted at the direction of Cooper in withdrawing the funds from the account and making the disbursement of them. This dissent characterizes the withdrawal wrongful as to Broadhead only because Broadhead was a joint tenant and the withdrawal created a risk of loss of the funds and also jeopardized Broadhead's survivorship rights by setting the stage for the very legal argument, here successfully made by Broadhead's personal representative, that the unilateral withdrawal by one tenant destroyed the other tenants' rights of survivorship which was an incident of the credit union joint account from which the withdrawal was made.
[2] Cases from other jurisdictions have reached this result. See Austin v. Summers, 237 S.C. 613, 118 S.E.2d 684 (1961); Gatewood v. Griffin, 549 P.2d 829 (Okl.App. 1976); In re Manfredini's Estate, 13 N.J. Super. 258, 80 A.2d 445 (N.J.App. 1951). This case does not involve the peculiar rights and relationships between spouses as was involved in Simpson v. Schoenemann, 263 So.2d 854 (Fla. 1st DCA 1972) nor does this case involve the guardian of an incompetent joint tenant withdrawing funds as was involved in Drozinski v. Straub, 383 So.2d 301 (Fla. 2d DCA 1980). However, the conclusion reached by this dissent is very consistent with the rationale of Drozinski. The court in Drozinski correctly stated that statutes that appear to be applicable to this problem are primarily for the protection for the depository institution and do not control as to ownership rights between the joint tenants. In Drozinski, funds were held in a joint account in the name of Nemec and Straub with right of survivorship. Nemec became incompetent and her appointed guardian withdrew all of the funds in the joint account. When Nemec soon thereafter died the other tenant Straub sued Nemec's estate claiming ownership as surviving joint owner. Drozinski held that the guardian did not have the right to withdraw funds not needed for the care of the ward and that the wrongful withdrawal did not destroy the incident of survivorship as to Straub and that Straub, or surviving tenant, was entitled to the ownership of the withdrawn funds.
[3] Under the rule adopted by the majority opinion, if Parson's wrongful withdrawal was effective to terminate the survivorship aspect of the joint account and Broadhead did not have the right during her lifetime to trace the withdrawn funds and to have them declared to be held in constructive trust with right of survivorship then Parson's wrongful withdrawal could be considered only to constitute a tortious conversion of Broadhead's then share for which Broadhead would have a cause of action that survived Broadhead's death and constituted a viable cause of action in Broadhead's personal representative. This view has a certain appeal here because Parson and Howell withdrew joint funds without Broadhead's knowledge, assent or agreement and to find a cause of action in Broadhead's estate gives the appearance of giving a remedy for the apparently wrongful withdrawal of the joint funds. However, on broader principles the view of this dissent is the better view. First, in this case, Broadhead's estate fails to obtain a share of the joint account not because of Parson and Howell's wrongful withdrawal but because the incident of survivorship that was attached to the gift of the joint account caused any tenant's interest to terminate at his or her death before the death of the others and Broadhead died first. Second, if Broadhead had the option to treat the wrongful withdrawal and disbursement as either a successful but tortious conversion and sue at law for damages or as ineffectual to accomplish a conversion and to have a court of equity trace the funds and impress a constructive trust on them or to have the funds restored to a joint account with right of survivorship Broadhead should be required to make that election of remedies before the death of one tenant (even herself) gave a controlling advantage to the right to make this election of remedies. Third, the principle of law established by the majority opinion  that the wrongful act of one tenant in withdrawing joint funds is effective to terminate an incident of survivorship then a wrongdoer can successfully accomplish a wrong, as where a tenant, having reason to believe or know that he will die before his cotenants, wrongfully withdraws joint funds so that when the wrongdoer does die before his joint tenants his estate can successfully retain a share of the funds on the theory that decedent's wrongful withdrawal terminated the survivorship aspect of the account thereby defeating the other tenants' rights as survivors. Fourth, Effie Cooper is presumed to have wanted the gifted funds to be held by the donees with the incident of survivorship which ultimately deprived Broadhead's estate of an interest; otherwise she could have placed one-third of the funds in each of three separate accounts in the names of Parson, Howell and Broadhead and could thereby have easily accomplished any intent to avoid the result of the incident of survivorship.