THOMAS W. McAULLIFFE v. MARJORIE ANN WILSON

No. 7826SC634

(Filed 1 May 1979)

1. **Banks and Banking § 4— joint account—ownership of funds—intent of parties**

     It is well established in this jurisdiction that persons may contract among themselves for the creation of a joint interest in property (including monies in a bank account) with right of survivorship, and, nothing else appearing, money in the bank to the joint credit of two persons is presumed to belong one-half to each person; however, where a controversy arises as to ownership, the intent of the parties will be controlling, and evidence may be received to prove such intent.

2. **Banks and Banking § 4— joint account—wrongful withdrawal—intent in setting up account**

     In an action to recover funds withdrawn by defendant from a joint savings account set up in both parties' names by defendant during the time that the parties were cohabiting, evidence was sufficient to support the trial court's conclusion that plaintiff set up the account solely for his convenience and at defendant's suggestion, and that defendant wrongfully took $30,000 from the account, even though defendant's testimony raised an inference that plaintiff acknowledged his obligation to defendant and was promising to care for her by opening the joint account.

APPEAL by defendant from *Davis, Judge.* Judgment entered 30 March 1978 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 30 March 1979.

Plaintiff brought this action to recover $30,000 in funds withdrawn by defendant from a joint savings account set up in both their names by plaintiff. Plaintiff alleged that defendant wrongfully converted the funds to her own use when she was not entitled to any of them, plaintiff having been the initial and only depositor to the account. Defendant denied that she had wrongfully converted the funds and asserted that she was entitled to them, both by virtue of the formation of the joint account and in *quantum meruit* for certain services rendered to plaintiff.

The evidence tended to show that defendant was the owner and operator of a dress shop in Charlotte, North Carolina, called the "Yum-Yum Tree." Plaintiff first met defendant at the "Yum-Yum Tree" in January of 1975, when a salesman from his automobile business was discussing trading cars with defendant. The relationship developed and by March of 1975 plaintiff and

defendant began cohabiting on a regular and settled basis at plaintiff's home in Monroe, North Carolina. There is some evidence to indicate that from time to time plaintiff and defendant represented themselves as being man and wife, although their relationship was never accorded any such status in fact.

Plaintiff was the part-owner of an automobile dealership, the management of which interest appears to have been problematic for him. Defendant's "Yum-Yum Tree" was apparently fairly successful. Defendant testified that plaintiff sought her advice and counsel with reference to his financial matters. The record indicates that plaintiff procured several loans in not insubstantial amounts from defendant during the course of their involvement. Plaintiff denied that defendant gave him any financial advice. Plaintiff was without a driver's license at this time, owing to several convictions for driving under the influence of intoxicating beverages and thus often needed the services of a chauffeur. These services were provided by defendant as requested, including several extended trips out-of-state. Defendant, although continuing on a diminished basis her management of the "Yum-Yum Tree," freely bestowed her feminine favors and domestic services upon plaintiff, expending monies for plaintiff's as well as their mutual benefits.

In 1976, plaintiff sold his interest in the automobile dealership, and received net proceeds from the sale totalling $115,000. Plaintiff deposited this sum on 16 September 1976, into a savings account set up as a joint account with right of survivorship. "T. W. McAulliffe" and "Mrs. Marjorie W. McAulliffe" were signatories for this joint account. The agreement creating the joint savings account signed by the parties provided as follows:

Date: 9/16/76                              Account No. 3880022-8

(b) Membership of joint holders with right of survivorship of share account.

(1) McAulliffe, (Surname); Mr. T. (First Name);  W. (Middle Name)

(2) McAulliffe, Mrs. Marjorie, W.

(3)

McAulliffe v. Wilson

The undersigned hereby applied for a membership and for a Opt. share account in the

NORTH CAROLINA SAVINGS AND LOAN ASSOCIATION and for the issuance of evidence of membership in the approved form in the joint names of the undersigned as joint tenants with the right of survivorship and not as tenants in common. Specimens of the signatures of the undersigned are shown below and the Association is hereby authorized to act without further inquiry in accordance with writings bearing any such signature; it being understood and agreed that any one of the undersigned who shall first act shall have power to act in all matters related to the membership and any share accounts in said Association held by the undersigned. The repurchase or redemption value of any such share account or other rights relating thereto may be paid or delivered in whole or in part to any one of the undersigned shall be a valid and sufficient release and discharge of said Association. And we do certify that we have each contracted and agreed with the other that the funds which may thereafter be invested in said account and not previously withdrawn, shall upon the death of either of us be the absolute property of the survivor. Membership in this Association is subject to the provisions of the Constitution and by-laws of this Association, which are hereby made a part of the application.

_____  _____  _____
(1) Signature        (2) Signature        (3) Signature
Rolling Hills Drive, Box 42-A Monroe, N. C. 28110
(Address)

Late in September of 1976, defendant began to have some apprehension as to her future and as to whether plaintiff would continue to care for her as she alleges he had promised. Therefore, defendant took the passbook to the joint account and withdrew $30,000 from it and deposited it to her own use and account. This action on her part inaugurated a season of fractiousness between the parties culminating in the instant action. At trial, plaintiff was awarded a judgment of $30,000 and $1,000 attorney's fees, less certain set-offs for valuable services performed by defendant and monies due and owing to her. From this judgment, awarding plaintiff $17,289.00 and $1,000 attorney's fees, defendant appeals, assigning error.

*Burns & Giordana, by William F. Burns, Jr., for the plaintiff.*

*Don Davis, for the defendant.*

MARTIN (Robert M.), Judge.

The trial court, in its conclusions of law, stated that defendant "wrongfully took the sum of Thirty Thousand Dollars ($30,000.00) from the plaintiff and that the plaintiff is entitled to be reimbursed for same and to recover interest thereon." We find this was correct. It was found by the trial court, and was not contested by plaintiff, that defendant performed a number of valuable services for plaintiff for which she was entitled to compensation. The value of these services was fixed by the trial court at $12,711. We find this to be correct also, and affirm this portion of the trial court's order.

[1] It is well established in this jurisdiction that persons may contract among themselves for the creation of a joint interest in property (including monies in a bank account) with right of survivorship. *See Wilson County v. Wooten,* 251 N.C. 667, 111 S.E. 2d 875 (1959). It is also the rule in this jurisdiction that, nothing else appearing, money in the bank to the joint credit of two persons is presumed to belong one-half to each person. *See Smith v. Smith,* 255 N.C. 152, 120 S.E. 2d 575 (1959). However, where a controversy arises as to ownership, the intent of the parties will be controlling, and evidence may be received to prove such intent. *See generally* 10 Am. Jur. 2d *Banks* § 374 (1963). In the instant case, there was evidence, uncontroverted, that a check made out to plaintiff was the sole deposit made to the joint account. The check represented proceeds from the sale of plaintiff's interest in the automobile dealership.

[2] The evidence received was sharply conflicting as to the intent of plaintiff in setting up the joint account. He testified that it was solely for his convenience and was done at defendant's suggestion. Defendant's testimony, on the other hand, raises an inference that plaintiff acknowledged his obligation to defendant and was promising to care for her by opening the joint account. When there are competing inferences arising from testimony of witnesses in a case, it is for the trier of fact to decide between them. The findings of fact by a trial court in a non-jury trial have the force and effect of a verdict by a jury and are conclusive

on appeal if supported by competent evidence, even though the evidence might sustain findings to the contrary. *Henderson County v. Osteen*, 38 N.C. App. 199, 247 S.E. 2d 636 (1978). The wisdom of this rule is especially apparent in situations such as the one presented by the instant case where the cold record reveals testimony from each party that precisely contradicts that of the other, and the evidence of either party, if believed, would support a finding for that party. The trial court, having had the fullest opportunity to hear the testimony and observe the demeanor of the parties, to weigh any competent evidence either party cared to place before the court and arrive at appropriate conclusions as to the intent of the parties and the value of any services performed, should be accorded deference unless his findings and conclusions are manifestly unsupported by the record. The record before us supports the trial judge's findings and conclusions and the judgment based thereon will not be disturbed.

The award of attorney's fees to plaintiff presents another question, however. Plaintiff cites no authority to justify the award and candidly concedes that there is none. We find that the allowance of attorney's fees was erroneous, and accordingly reverse that portion of the trial court's order making the award to plaintiff.

The judgment of the trial court is accordingly affirmed in part and reversed in part.

Judges MITCHELL and WEBB concur.