JUDITH P. POWERS v. WAYNE P. POWERS

No. 9014DC749

(Filed 20 August 1991)

**1. Divorce and Separation § 38 (NCI4th)— separation agreement—order of court—specific performance inappropriate**

The trial court erred by granting specific performance for the enforcement of a separation agreement incorporated into a consent judgment entered in 1982, before the distinction

POWERS v. POWERS

[103 N.C. App. 697 (1991)]

between consent judgments approved by the court and those adopted by the court was abolished. Specific performance is a remedy which applies to the enforcement of a contract, not to the enforcement of a court order.

**Am Jur 2d, Divorce and Separation §§ 857, 858.**

**Specific performance of provisions of separation agreement other than those for support or alimony. 44 ALR2d 1091.**

2. **Divorce and Separation § 41 (NCI4th)— separation agreement — enforcement — contempt**

There was competent evidence to support each disputed finding of fact in an action in which defendant was held in contempt for not complying with a separation agreement provision requiring him to provide a college education for a child.

**Am Jur 2d, Divorce and Separation §§ 859, 1063, 1066.**

3. **Divorce and Separation § 41 (NCI4th)— separation agreement — college education — finding of contempt**

The trial court correctly found defendant in contempt for failing to comply with a provision in a separation agreement incorporated into a consent judgment in that he unreasonably withheld his consent to his daughter attending UNC-Wilmington.

**Am Jur 2d, Divorce and Separation §§ 859, 1063, 1066.**

4. **Divorce and Separation § 520 (NCI4th)— separation agreement — enforcement — attorney fees**

The trial court erred by awarding plaintiff attorney fees in an action to hold defendant in contempt for failing to abide by a portion of a separation agreement. Attorney fees are not recoverable either as an item of damages or of costs absent express statutory authority. Previous cases allowing the award of attorney fees to a plaintiff prevailing in a civil contempt action are distinguished in that here no award is authorized by statute and neither child support nor equitable distribution are involved.

**Am Jur 2d, Divorce and Separation §§ 598, 597.**

Judge WELLS concurring in part and dissenting in part.

**POWERS v. POWERS**

[103 N.C. App. 697 (1991)]

APPEAL by defendant from Order and Judgment entered 20 March 1990 in DURHAM County District Court by *Judge David Q. LaBarre.* Heard in the Court of Appeals 12 March 1991.

*James B. Craven III for plaintiff-appellee.*

*Coleman, Bernholz, Bernholz, Gledhill & Hargrave, by Kim K. Steffan, for defendant-appellant.*

WYNN, Judge.

I

Plaintiff and defendant were married on 24 August 1968 in Ocean City, New Jersey. Thereafter, they lived together as husband and wife in Durham County, North Carolina until May 1980, at which time they separated and entered into a separation agreement. The parties subsequently obtained a divorce in the State of Texas in May 1981; however, the separation agreement executed in North Carolina apparently was not mentioned in the Texas divorce decree. Following the parties' divorce, the defendant remarried and moved to the State of Idaho. At the time this action was commenced, plaintiff was a citizen and resident of the State of New Hampshire and defendant was a citizen and resident of the State of Idaho.

In August 1981, plaintiff filed a complaint against the defendant seeking the specific performance of certain provisions contained in the May 1980 separation agreement. In particular, it was alleged that the defendant had failed to comply with provisions for the support of the parties' daughter, Jennifer Lesley Powers, then ten years old, and for the payment of certain medical expenses.

In August 1982, the parties entered into a consent judgment which, *inter alia*, modified the parties' May 1980 separation agreement and incorporated it. As modified, the separation agreement provided that the defendant would "provide and pay for four years of college education for Jennifer at a college to be selected by the Husband and Jennifer, provided however, that the Husband shall not unreasonably withhold his consent to Jennifer's selection of a college." (After it became apparent that Jennifer and her father could not agree on which college Jennifer should attend, Jennifer, following her graduation from high school in June 1989, elected to attend the University of North Carolina at Wilmington (UNC-Wilmington) in the fall of 1989.) The consent judgment also

provided that the defendant's financial obligation to provide a college education for Jennifer would be at least equal to the cash surrender value of a "whole life" insurance policy which the defendant was obligated to carry on his life under the terms of the original separation agreement.

After entry of the consent judgment, the defendant continued to disregard certain terms of the modified separation agreement. Plaintiff then filed a motion on 27 December 1989 seeking, *inter alia*, an order requiring the defendant to show cause why he should not be held in contempt of court for failing to comply with the terms of the consent judgment. Most pertinent to this appeal, the plaintiff alleged that the defendant had failed to "provide and pay for four years of college education for Jennifer." Pursuant to plaintiff's motion, a show cause order was issued and a hearing was held on 26 February 1990.

Following the hearing, the court concluded that the defendant was in contempt of the "college expenses" provision of the consent judgment because he had unreasonably withheld consent to Jennifer's attending UNC-Wilmington. (The defendant claimed that his withholding of consent to Jennifer's attending UNC-Wilmington was reasonable because he could not afford to send her to school there.) In order to purge himself of the contempt, the defendant was ordered to pay the plaintiff the sum of $10,501.68 (the amount of tuition in arrears, plus reimbursement for $841.00 in medical expenses); the full cost of Jennifer's college expenses in subsequent years; and the plaintiff's attorney fees. In addition, although the plaintiff did not specifically request it as relief, the court's Order and Judgment concluded that the plaintiff was entitled to the defendant's specific performance of the obligations set forth in the parties' modified separation agreement. From the Order and Judgment finding the defendant in contempt and ordering specific performance, the defendant appeals.

## II

Defendant makes several assignments of error, many of which are duplicative in nature. In essence, defendant contends that several of the trial court's findings of fact are unsupported by the evidence and that the totality of the findings do not support the judgment holding him in contempt of the consent judgment and ordering him to pay for his daughter's education at UNC-Wilmington. De-

fendant also contends that the trial court erred by awarding the plaintiff attorney's fees.

[1] We note initially that the consent judgment in this case was entered in 1982, and is therefore not controlled by our Supreme Court's decision in *Walters v. Walters*, 307 N.C. 381, 298 S.E.2d 338 (1983), which abolished the tradition of treating "court-approved" and "court-adopted" separation agreements differently. The ruling in that case was expressly limited to the consent judgment in that case and to consent judgments entered after 11 January 1983, the date of that opinion. *Id.* at 386, 298 S.E.2d at 342.

For those consent judgments entered prior to *Walters*, the courts of this State recognized a distinction between two types of consent judgments: (1) consent judgments in which the court merely approved of agreements between parties; and (2) consent judgments in which the court fully adopted agreements between parties as its own determination of the parties' respective rights and obligations. *Bunn v. Bunn*, 262 N.C. 67, 69, 136 S.E.2d 240, 242 (1964).

A consent judgment of the first type was not considered to be an order of the court; rather, it was considered to be "nothing more than a contract between the parties made with the approval of the court." *Id.* As such, a party who wished to enforce the rights or obligations under such a consent judgment was required to do so through traditional contract channels. *Walters*, 307 N.C. at 385, 298 S.E.2d at 341.

A consent judgment of the second type, on the other hand, *was* considered to be an order of the court. Consequently, the rights and obligations arising under this type of consent judgment were enforceable through the court's contempt powers. *Id.*

The consent judgment in the instant case expressly "incorporated" the parties' 1980 separation agreement, as modified, and "made it a part [t]hereof." "When the parties' agreement . . . is incorporated in the judgment, their contract is superceded by the court's decree." *Mitchell v. Mitchell*, 270 N.C. 253, 256, 154 S.E.2d 71, 73 (1967). "The obligations imposed are those of the judgment, which is enforceable as such. In such a case [a party] has the option of enforcing the judgment by a rule of contempt or by execution, or both." *Id.* (citations omitted). It is clear that the consent judgment in the instant case is indeed of the second type

discussed above and is therefore enforceable through the court's contempt powers. *See also Bunn,* 262 N.C. at 69, 136 S.E.2d at 243; *Rowe v. Rowe,* 305 N.C. 177, 183, 287 S.E.2d 840, 844 (1982).

Since the consent judgment in this case *sub judice* is to be considered and enforced as an order of the court, we first find that the trial court improvidently granted the plaintiff specific performance as a remedy for the defendant's failure to comply with the consent judgment. Specific performance is a remedy which applies to the enforcement of a contract, not to the enforcement of a court order. Accordingly, that portion of the trial court's Order and Judgment ordering specific performance is vacated.

[2] Turning to the defendant's assignments of error, we note that our review of contempt proceedings is confined to a determination of whether there is competent evidence to support the findings of fact and whether the findings support the judgment. *Koufman v. Koufman,* 97 N.C. App. 227, 388 S.E.2d 207 (1990); *McMiller v. McMiller,* 77 N.C. App. 808, 336 S.E.2d 134 (1985). In this case, the defendant contends both that certain findings of fact are unsupported by the evidence, and that the totality of the findings do not support the judgment finding him in contempt.

The trial court's Order and Judgment contains several findings of fact made en route to concluding that the defendant had unreasonably withheld his consent to Jennifer's attending UNC-Wilmington and that the defendant should, therefore, be held in contempt. For the sake of simplicity, we have renumbered and paraphrased the findings of fact which the defendant claims are unsupported by the evidence; they include the following:

(1) that the defendant had been unwilling, up to the date of the hearing, to pay at least the cash surrender value of his life insurance policy;

(2) that the defendant had contributed up to $4000 per year toward his stepson's college education at Fresno State University and at the University of Idaho;

(3) that the defendant paid some portion of the expenses for his current wife and stepson to go to Switzerland on a band trip;

(4) that Jennifer had no interest in attending college in Idaho or the State of Washington;

(5) that the defendant gave his "qualified endorsement" to Jennifer's attending the University of North Carolina at Chapel Hill (UNC-Chapel Hill), where he had gone to college; and

(6) that the defendant was willing to agree only to Jennifer's attendance at the University of Idaho.

After reviewing the transcript and the record, we conclude that each of these findings of fact is supported by the evidence.

With respect to finding number 1, although the defendant testified that he "offered" the cash surrender value of his life insurance policy for Jennifer's college education, we can find no evidence, and the defendant points to none, that the defendant has in fact "offered" that sum. There is no evidence that the cash surrender value of the life insurance policy was ever *tendered* to either Jennifer or her mother for their immediate use for Jennifer's educational expenses. Contrary evidence to which the defendant points reveals only that he said he would pay that amount. There is no indication that the defendant ever followed through with his "offer" and thus this finding of fact is supported by the evidence.

Finding number 2 is also supported by the evidence. The defendant testified that he paid a portion of "the balance" of his stepson's tuition expenses after a "scholarship" had been exhausted. The defendant's testimony as to the exact amount which he paid was, at best, equivocal. He first testified that he paid the entire balance of his stepson's education, which was $2,000 per semester. Then he testified that his total contribution was "$2,500 perhaps," but that it was "hard to say." Finally, he estimated that his total contribution was only $2,000. While this testimony is not unambiguous, it certainly supports the finding that the defendant contributed *up to* $4,000 per year for his stepson's college education.

The defendant also contends that there was no evidence that he "had the means to send his family to Switzerland." We note initially that the trial court did not find that the defendant had the means to send his family to Switzerland; rather, the trial court found that the defendant "paid some portion of the expenses for his current wife and [stepson] to go to Switzerland on a band trip." This finding is also supported by the defendant's own testimony. The defendant testified that "[he and his wife] had to borrow the money from the bank." He also testified that they paid the loan back. Although the defendant later testified that it was his wife

alone who procured the bank loan, the trial court was free to question the credibility of this assertion, especially since it contradicted his earlier testimony. In any event, it was not unreasonable for the court to find or conclude that the defendant helped repay the loan. Finding number 3 is also supported by the evidence.

The finding that Jennifer had no interest in attending the University of Idaho is reasonably inferred from the fact that she did not submit an application for admission to that school. The defendant contends that the evidence is to the contrary of the trial court's finding. The defendant points to the fact that Jennifer visited the University of Idaho campus while visiting her father in Idaho. In this regard, we note that Jennifer's trip to that campus was at the behest of her father. There is no evidence that it was her desire to make the visit. The trial court's finding here is supported by the evidence.

The finding that the defendant gave his "qualified endorsement" to Jennifer's attending UNC-Chapel Hill is equally supported by the evidence. The defendant's own testimony reveals that he encouraged Jennifer to apply to UNC-Chapel Hill, which the evidence indicates is a more expensive school to attend than UNC-Wilmington. The defendant's assertion that he never intended to imply that he could single-handedly afford the cost of attending UNC-Chapel Hill only serves to strengthen the trial court's finding that the defendant's endorsement of UNC-Chapel Hill was *qualified*.

The defendant's final contention with respect to the findings of fact is that there was no evidence that he was unwilling to agree to colleges other than the University of Idaho and UNC-Chapel Hill. To be sure, the evidence on this point is in sharp conflict; however, there was competent evidence to support the trial judge's finding. The testimony of Jennifer and her mother tended to show that the defendant did not give Jennifer practical alternatives to the University of Idaho. Moreover, Jennifer was not admitted to UNC-Chapel Hill. The defendant's evidence, on the other hand, tended to show that he suggested many "viable" alternatives for Jennifer to attain her educational goals. For instance, he testified that he asked Jennifer to consider attending many different colleges, including, but not limited to, the University of Idaho. He also suggested that if Jennifer was determined to attend UNC-Wilmington, there were ways to limit the expenses, such as living with her North Carolina-resident grandparents for

a year in order to attain in-state residency, or attending a less-expensive junior college for two years and then transferring to UNC-Wilmington.

As stated by this court in *McAulliffe v. Wilson*, 41 N.C. App. 117, 254 S.E.2d 547 (1979):

> When there are competing inferences arising from testimony of witnesses in a case, it is for the trier of fact to decide between them. The findings of fact by a trial court in a non-jury trial have the force and effect of a verdict by a jury and are conclusive on appeal if supported by competent evidence, even though the evidence might sustain findings to the contrary . . . . The trial court, having had the fullest opportunity to hear the testimony and observe the demeanor of the parties . . . should be accorded deference unless his findings and conclusions are manifestly unsupported by the record.

*Id.* at 121, 254 S.E.2d at 550.

After carefully reviewing the record, we conclude that there was competent evidence to support each of the disputed findings of fact. Defendant's assignment of error on this point is, therefore, overruled.

### III

[3] We now consider whether, as the defendant contends, the totality of the trial court's findings of fact fail to support the judgment holding the defendant in civil contempt.

N.C. Gen. Stat. § 5A-21(a) provides, in pertinent part that, "[f]ailure to comply with an order of a court is a continuing civil contempt as long as . . . (3) [t]he person to whom the order is directed is able to comply with the order or is able to take reasonable measures that would enable him to comply with the order." Although the language of section 5A-21(a) does not expressly so state, it has nevertheless been held that one may not be held in civil contempt for failure to comply with an order of the court unless his failure be willful. *Jones v. Jones*, 52 N.C. App. 104, 278 S.E.2d 260 (1981).

In the instant case, the trial court concluded that the defendant was in contempt of court because he failed to comply with the consent judgment by unreasonably withholding his consent to

POWERS v. POWERS

[103 N.C. App. 697 (1991)]

Jennifer's attending UNC-Wilmington. The defendant, on the other hand, contends that the findings of fact do not support the conclusion that his withholding of consent was unreasonable.

We need look no further than the trial court's finding that the defendant was unwilling to pay the cash surrender value of his life insurance policy toward Jennifer's education to substantiate the trial court's conclusion. The defendant himself testified that he was covered under a $42,000 life insurance policy which, at the time of the hearing, had a cash surrender value of between $13,000 and $15,000. The consent judgment entered into by the parties provided that the defendant's obligation to provide a college education for his daughter would be *"at least equal to"* this cash surrender value. Although the defendant maintains that he offered this amount to Jennifer and her mother for educational expenses, we believe, as the trial court apparently did, that such "offer" was illusory. We therefore hold that the trial court was correct in concluding that the defendant unreasonably withheld his consent to Jennifer's attending UNC-Wilmington. It follows that the trial court was correct in thereafter finding the defendant in contempt of the consent judgment since the requirements of N.C. Gen. Stat. § 5A-21(a) had been met.

IV

[4] Defendant's final contention is that the trial court erred in awarding the plaintiff attorney's fees in the amount of $5,850.50 and in awarding the plaintiff costs.

With respect to the award of costs to the plaintiff, we hold that the defendant has failed to properly preserve this question for appellate review because it has not been made the subject of an assignment of error. It is, therefore, beyond our scope of review and we decline to address it. N.C.R. App. P. 10(a). The defendant has, however, properly preserved for appeal the issue of attorney's fees. After carefully reviewing the law on this subject, we are of the opinion that the trial court was without authority to award the plaintiff attorney's fees.

The law is clear in North Carolina that absent express statutory authority for doing so, attorney fees are not recoverable either as an item of damages or of costs. *United Artists Records, Inc. v. Eastern Tape Corp.*, 18 N.C. App. 183, 187, 196 S.E.2d 598, 602, *cert. denied*, 283 N.C. 666, 197 S.E.2d 880 (1973); *Bowman*

*v. Comfort Chair Co.,* 271 N.C. 702, 157 S.E.2d 378 (1967). In *United Artists,* this court squarely held that neither the provisions of N.C. Gen. Stat. § 6-18 (when costs allowed to plaintiff as a matter of course), nor the provisions of N.C. Gen. Stat. § 6-20 (allowance of costs in discretion of court) was applicable to an action for civil contempt. 18 N.C. App. at 188, 196 S.E.2d at 602.

We are aware that previous cases from this court have held that a trial court may properly award attorney's fees to a plaintiff who prevails in a civil contempt action. *See, e.g., Cox v. Cox,* 10 N.C. App. 476, 179 S.E.2d 194 (1971); *Blair v. Blair,* 8 N.C. App. 61, 173 S.E.2d 513 (1970) (both cases holding that attorney's fees were properly awarded in a civil contempt action to enforce a child support order since attorney's fees could have been awarded in the original action for child support). However, we find these cases immediately distinguishable because they involved the instance where an award of attorney's fees was expressly authorized by statute.

More recently, two other decisions of this court extended the holding in *Blair* to allow attorney fees in contempt actions to enforce equitable distribution awards, even though attorney's fees in equitable distribution actions were not authorized by statute. See *Hartsell v. Hartsell,* 99 N.C. App. 380, 393 S.E.2d 570 (1990); *Conrad v. Conrad,* 82 N.C. App. 758, 348 S.E.2d 349 (1986). We, however, distinguish the case at hand in that it involves neither a child support order (the child support provision under the consent judgment expired when the child reached 18 years of age and the provision here was made separate and apart from the child support provision) nor an equitable distribution award. As such, we decline to further extend the holding of *Blair* to contempt actions for the enforcement of a consent judgment under the facts of this case.

We conclude that the trial court was without authority to award the plaintiff attorney's fees. The order allowing plaintiff attorney's fees is, therefore, vacated.

For the reasons discussed above, those portions of the trial court's Order and Judgment which granted the plaintiff the remedy of specific performance and attorney's fees are vacated. The trial court's Order and Judgment is in all other respects affirmed.

Affirmed in part and vacated in part.

Judge GREENE concurs.

Judge WELLS concurs in part and dissents in part.

Judge WELLS concurring in part and dissenting in part.

I concur in all aspects of the majority opinion except that portion which deals with the awarding of counsel fees to plaintiff.

The consent judgment which was the basis of the present action was entered on 24 August 1982, when Jennifer was eleven years old. That judgment provided for *Jennifer's support* in two ways: (1) monthly payments to plaintiff for Jennifer's support until Jennifer reached the age of 18, at which time those payments to plaintiff would terminate, and (2) payment for Jennifer's college education. Thus, this present action was an action to enforce defendant's obligation of support for his minor child entered into on 24 August 1982, and I therefore am of the opinion that the trial court properly awarded plaintiff attorney's fees for the enforcement of defendant's obligation of support.