IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
MAY 20, 2009 Session

## WILLIAM F. McNEAL v. BETTY G. McNEAL

**Direct Appeal from the Chancery Court for Madison County**
**No. 58378     David G. Hayes, Chancellor by Designation**

---

**No. W2009-00160-COA-R3-CV - Filed October 13, 2009**

---

This appeal involves the enforcement of a marital dissolution agreement, which provided that the parties would jointly own various retirement accounts after their divorce. Several years after the divorce, the wife filed a petition for relief alleging that the husband was using the funds in the retirement accounts for his own benefit and denying her access to the funds. The trial court essentially divided the retirement funds between the parties and ordered the husband to repay the wife one-half of the funds he had withdrawn since the divorce. The husband appeals. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, P.J.,W.S., delivered the opinion of the court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

Jennifer Twyman King, Jackson, TN, for Appellant

Barbara Hobock, Cynthia Chandler-Snell, Humboldt, TN, for Appellee

**OPINION**

## I. FACTS & PROCEDURAL HISTORY

William McNeal and Betty McNeal were married for twenty-four years before they divorced in 2001. At the time of the divorce, Husband had already "retired" and was withdrawing money from various investment accounts held in his name.[1] Wife was working as a teacher and contributing to her own retirement account. The parties entered into a Marital Dissolution Agreement ("MDA"), which was approved by the court and incorporated by reference into the final decree of divorce. The MDA provided, in pertinent part:

> ### STOCKS, BONDS, RETIREMENT ACCOUNTS AND INVESTMENT PROPERTY:
> All stocks, bonds, securities, bank accounts (other than personal checking accounts)[,] retirement accounts and such other investment property not otherwise set aside, separated or divided herein which stands in the names of either or both parties shall henceforth be held in the names of both parties as joint tenants with right of survivorship as it is the expressed intent of both parties to continue to own the property and assets described [i]n this paragraph jointly and not severally. Both parties agree to execute such documents or to do such other things as may prove necessary to reflect their joint ownership with right of survivorship in this property.

The MDA also divided the parties' other property and obligated Husband to pay certain debts and obligations following the divorce.

Following the divorce, Husband continued to withdraw money from the investment accounts held in his name. At some point, he combined the investment accounts into one account in his name. Wife continued to contribute to, but not withdraw from, her retirement account. Neither party added the other's name to his or her account as joint owner. However, they discussed dividing the funds in the accounts on numerous occasions.

On January 7, 2008, Wife filed a "Petition for Relief from Final Judgment and for Contempt," alleging that Husband was "depleting the [investment] accounts for his own personal benefit or use" and managing the parties' jointly held assets without any input from her. Wife asked the trial court to disburse the parties' jointly held assets, or in the alternative, order Husband to execute the documents necessary to name her as joint owner of the account.

Husband filed a response and counter-petition, alleging that Wife had not added his name to her retirement account in accordance with the MDA. Husband also claimed that Wife was benefitting from his investment account because he was withdrawing funds from the account and using them to pay debts for her benefit. Husband requested that the court divide the parties' accounts and give him credit for paying her debts from his account.

---

[1] Husband testified that his employer did not offer a retirement plan, but he decided to "retire" at age 51 because he had been working for 32 years and he "thought it was time."

Senior Judge David Hayes was assigned to hear the case by the Tennessee Supreme Court. Both parties testified at a hearing on December 1, 2008. Wife testified that she thought the aforementioned MDA provision meant that she and Husband would own all of the accounts jointly, meaning that he would receive part of her account and she would receive part of his. Wife testified that she asked Husband to add her name to his investment account after the divorce, but he told her that it would be easier to manage the account if only his name was listed as the owner. When Wife asked for information about the account, Husband provided her with a copy of an account statement on one occasion and copies of his monthly withdrawal checks on another occasion. Wife said she often discussed the account with Husband, and he would tell her whether the account was "up or down." She claimed that she told Husband that if he was withdrawing money for himself, then he should withdraw equal amounts for her, but he refused to do so. According to Wife, Husband told her that she could not withdraw anything from the account until she reached the age of 59 and a half. Wife said that in 2007, she asked again about dividing the accounts, and Husband refused. She said she then consulted with a financial advisor and ultimately decided to retain an attorney.[2]

Wife testified that, at the time of the divorce, Husband's investment accounts were worth "$400,000 and something." She testified that Husband had withdrawn around $157,000 from the investment account since the divorce, according to the documents produced during discovery. Wife said she had not withdrawn any money from the investment account held in his name or from her retirement account. Wife requested that the trial court equally divide the remaining balance of Husband's investment account, and in addition, require Husband to pay her one-half of the amount he had withdrawn from the account since the divorce. Regarding her retirement plan, Wife submitted that Husband should be awarded one-half of the portion of the account earned during the parties' marriage.

Husband testified that, at the time of the divorce, he intended for both parties to own the accounts "together." He said he told his attorney to draft the MDA so that both parties would have "an equal retirement program." However, Husband acknowledged that he had maintained control of his investment account since the divorce, withdrawing money from the account but not contributing money to it. He admitted that Wife asked him to add her name to his account after the divorce, and that he told her that it would be "more convenient" if the account stayed in his name only. Husband denied that Wife ever asked him to withdraw equal amounts of money for her. However, he conceded that Wife asked for some money from the account in 2007 when she was contemplating retirement, and that the parties had "tried to settle these things numerous times." Husband claimed that it was he who would suggest that the parties "split the accounts up" and "divide this stuff up equally so that we can get on with our lives." Yet, according to Husband, Wife would say that she did not know anything about the value of her account and decided to "just leave it alone." Husband later testified that the parties attempted to divide the accounts up "a couple of times and it was just hard to do."

---

[2] Wife was not represented by an attorney during the divorce. Husband's attorney drafted the MDA.

Husband said that he worked in a landscaping business for three years after the divorce and made a total of $30,000. Other than that $30,000, he said that his sole source of income in the seven years since the divorce consisted of withdrawals from the investment account. However, Husband claimed that of the $157,000 he withdrew from his account, $124,000 was used to pay Wife's debts. He claimed that soon after the divorce, he paid off a $55,000 home equity credit line owed against the house awarded to Wife with funds from the investment account. Husband claimed that he also paid approximately $25,000 toward the purchase of a new vehicle for Wife. In addition, Husband claimed that he paid the real estate taxes and homeowner's insurance on the residence awarded to Wife in the divorce with funds from the investment account. Husband submitted that these payments should be credited against Wife's portion of the investment account because she benefitted from the payments. Alternatively, Husband claimed that neither party should be awarded a portion of the other's retirement account, because if Wife decided to retire in the next year, she could potentially receive more money per month from her retirement plan than he was currently withdrawing from his investment account. The balance of Wife's retirement plan was approximately $92,000 at the time of trial.

As for Husband's argument regarding the credits, Wife conceded that he had paid various debts and obligations since the divorce. However, she pointed out that Husband was ordered to pay many of those debts pursuant to the MDA, and she said that when executing the MDA, she did not expect that he would be paying those obligations with her share of the retirement funds. Wife said that Husband offered to pay for half of the cost of her new vehicle, but she said she did not realize that he intended to make those payments with funds from the investment account. In sum, Wife claimed that Husband should not be allowed to deduct any of the debt payments from her share of the investment account.

The trial court entered an order on January 30, 2009, dividing the parties' accounts. The court found that Husband and Wife were "equal owners" of the accounts. Wife was awarded one-half of the balance remaining in the investment account held in Husband's name, or $127,043.35. In addition, the court found that Husband had withdrawn a total of $162,463.00 from the account since the divorce, and Wife was awarded a judgment for one-half that amount, or $81,231.50. Regarding Wife's retirement account, Husband was awarded one-half of the portion of the account earned by Wife during the parties' marriage. Husband timely filed a notice of appeal.

## II. ISSUES PRESENTED

Husband presents the following issues, slightly restated, for review:
1.      Whether the trial court erred in failing to examine the factors contained in Tennessee Code Annotated section 36-4-121 in order to make an equitable division of the parties' retirement accounts;

2. Whether the trial court erred in awarding Wife one-half of the amount of funds withdrawn by Husband since the divorce, without giving Husband credit for the funds he expended for the benefit of Wife; and

3. Whether the parties, by their actions, waived any right to assert that the retirement account of the other party was a joint asset.

Wife claims that she should be awarded her attorney's fees on appeal because Husband's arguments are frivolous. For the following reasons, we affirm the decision of the chancery court. In addition, we decline to award attorney's fees to Wife on appeal.

## III. STANDARD OF REVIEW

On appeal, a trial court's factual findings are presumed to be correct, and we will not overturn those factual findings unless the evidence preponderates against them. Tenn. R. App. P. 13(d) (2008); **Bogan v. Bogan**, 60 S.W.3d 721, 727 (Tenn. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. **Watson v. Watson**, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005) (citing *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. RR Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999)). We review a trial court's conclusions of law under a *de novo* standard upon the record with no presumption of correctness. **Union Carbide Corp. v. Huddleston**, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

## IV. DISCUSSION

### A. Failure to apply Tennessee Code Annotated section 36-4-121

On appeal, Husband first argues that the trial court erred because "[t]here is no indication from the record that the Trial Court considered the statutory factors in making an equitable division of the retirement account[s]." Husband also argues that the trial court should have considered the MDA's overall distribution of the marital assets in order to reach an equitable division of the retirement accounts.

We find no error in the trial court's actions. The court was not required to equitably distribute the accounts utilizing the statutory factors as if it was originally dividing marital property in a divorce case. The 2001 divorce decree expressly adopted the provisions of the MDA, in which the parties agreed that their retirement accounts would "henceforth be held in the names of both parties as joint tenants with right of survivorship as it is the expressed intent of both parties to continue to own the property and assets described [i]n this paragraph jointly and not severally." Husband does not argue that this paragraph was inapplicable to the retirement accounts. Therefore, we find no error in the trial court's decision to interpret and enforce the MDA provision as written.

-5-

Although Husband does not specifically challenge the trial court's conclusions regarding the parties' rights as joint tenants, we note that we find no error in the court's actions. "Where funds are on deposit in a joint account with right of survivorship, . . . during the lifetime of the joint tenants a rebuttable presumption arises that the parties own the money on deposit equally." *Leffew v. Mayes*, 685 S.W.2d 288, 291 (Tenn. Ct. App. 1984) (citing *Kinkenon v. Hue*, 207 Neb. 698, 301 N.W.2d 77 (1981); *Craig v. Curtiss*, 64 Ohio App. 2d 72, 411 N.E.2d 197 (1979); *Phillips v. Phillips*, 70 A.D.2d 30, 419 N.Y.S.2d 573 (1979); *McAulliffe v. Wilson*, 41 N.C. App. 117, 254 S.E.2d 547 (1979)). In a suit by one joint tenant against the other, "the parties may prove the ownership of the funds that went into the account." *Id.* However, if there is no evidence to overcome the presumption of equal ownership, "we presume that each joint tenant held an interest in the accounts in equal proportion." *Knight v. Lancaster*, 988 S.W.2d 172, 176 (Tenn. Ct. App. 1998).

"[D]uring the lifetime of joint tenants (other than husband and wife) with right of survivorship, the funds deposited in such an account are held in divisible parts . . . ." *Leffew*, 685 S.W.2d at 291. "Even though a joint tenant may withdraw the entire fund, one who does withdraw funds in excess of his moiety[3] is liable to the other joint tenant for the excess so withdrawn." *Id.* (citing *Bricker v. Krimer*, 13 N.Y.2d 22, 241 N.Y.S.2d 413, 191 N.E.2d 795 (1963); *Austin v. Summers*, 237 S.C. 613, 118 S.E.2d 684 (1961); *Fecteau v. Cleveland Trust Co.*, 171 Ohio St. 121, 167 N.E.2d 890 (1960)).

Here, it was undisputed that neither party contributed any funds to the investment accounts held in Husband's name since they entered into the MDA agreeing to own the funds jointly. Thus, we find no error in the trial court's decision to award Wife one-half of the amount he expended from the account since the divorce, in addition to one-half of the balance remaining in Husband's investment account.[4] Likewise, it was undisputed that only Wife contributed funds to her retirement account since the divorce, and we find no error in the trial court's award to Husband of one-half of the marital portion of Wife's retirement account.

## B. Credits

Next, Husband argues that a credit should have been imposed against Wife's share of the investment accounts for the funds Husband withdrew from the accounts and spent for her benefit. Husband claims that he withdrew $55,000 from the investment accounts to pay off the home equity line of credit encumbering the residence that was awarded to Wife in the divorce. In addition,

---

[3] "Joint owners of a bank account with the right of survivorship hold by moieties or divisible parts." *Matthews v. Barret*, Shelby Equity No. 26, 1991 WL 30192, at *9 (Tenn. Ct. App. W.S. Mar. 11, 1991). A "moiety" is defined as "[t]he half of anything. Joint tenants are said to hold by moieties." *Black's Law Dictionary* 906 (5th ed. 1979).

[4] At trial, Husband testified that the value of his retirement account had also decreased since the divorce due to market conditions. However, Wife did not seek a simple award of one-half of the value of the account at the time of the divorce. She only sought one-half of the balance remaining in the account, and one-half of the funds that Husband withdrew since the divorce. The trial court granted Wife's request, and we find no error in its decision.

Husband claims that he paid the property taxes and homeowners' insurance on Wife's residence following the divorce. Husband also claims that he withdrew approximately $25,000 from the investment accounts to help Wife pay for a new vehicle. In sum, Husband claims that Wife "directly benefitted from at least $100,000 of [the] funds" he withdrew from the retirement account.

We note that the MDA obligated Husband to pay "any existing mortgage indebtedness" against the residence awarded to Wife. Wife testified that there was no mortgage against the residence; there was only a home equity line of credit. In addition, Husband agreed in the MDA "to pay and maintain the homeowners insurance and real estate taxes on the home [awarded to Wife] for so long as the wife shall reside therein or until she remarries, whichever event first occurs." The MDA also obligated Husband to "assume and pay the balance of the lease payments due under the wife's existing contract [on her vehicle]" and "to pay the premium for insurance on said vehicle." Therefore, even though Husband made payments after the divorce that benefitted Wife, at least some of the debts were Husband's obligations pursuant to the MDA. The MDA did not provide that Husband could pay these debts using Wife's share of the investment accounts, nor did it state that Husband would receive some type of credit for paying the debts. The MDA simply provided that Husband would pay the debts, and that he and Wife would jointly own the investment accounts. We find no support for his argument that he was entitled to a credit for his payment of these obligations.

Husband's payment of other debts, such as the new car payment, was apparently voluntary. Husband does not contend that Wife agreed that such payments would be made using her share of the accounts, and Wife testified that she had no knowledge that Husband was using money from the accounts to make the payments. In any event, we conclude that such payments did not alter Wife's rights with respect to the investment accounts as set forth in the MDA. The MDA expressly stated, "A modification or waiver of any of the provisions of this agreement shall be effective only if made in writing and executed with the same formality as this agreement." Finding no written modification here, we affirm the trial court's decision not to give Husband a credit against Wife's share of the investment accounts.

### C.   Waiver

Finally, Husband argues that he and Wife "modified the terms of the [MDA] by their conduct," thereby waiving any right that either party had to the other's retirement account. From our

review of the record, Husband did not raise this issue before the trial court.  Nevertheless, we find the issue meritless due to the following provision of the MDA:

**MODIFICATION:**
A modification or waiver of any of the provisions of this agreement shall be effective only if made in writing and executed with the same formality as this agreement.  Failure of either party to insist upon strict performance of any of the provisions of this agreement shall not be construed as a waiver of any subsequent default of the same or similar nature.

In addition, Husband admits that Wife asked him to add her name to his accounts after the divorce, that she asked for money from the accounts, that she asked for information about the accounts on numerous occasions, and that the parties tried several times to split the accounts up themselves. Wife was not so neglectful in failing to take action regarding the accounts that she would "induce a belief that it was [her] intention and purpose to waive" her right to the accounts. *See **Brewer v. Brewer***, 869 S.W.2d 928, 934 (Tenn. Ct. App. 1993).

### D.    *Attorney's Fees on Appeal*

Wife contends that she should be awarded attorney's fees because Husband's appeal was frivolous.  Tennessee Code Annotated section 27-1-122 provides:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

The decision to award damages for the filing of a frivolous appeal rests solely in the discretion of this Court. ***Whalum v. Marshall***, 224 S.W.3d 169, 180-81 (Tenn. Ct. App. 2006) (citing *Banks v. St. Francis Hosp.*, 697 S.W.2d 340, 343 (Tenn. 1985)).  "Successful litigants should not have to bear the expense and vexation of groundless appeals." *Id.* at 181 (quoting *Davis v. Gulf Ins. Group*, 546 S.W.2d 583, 586 (Tenn. 1977)).  An appeal is frivolous when it has "no reasonable chance of success" or is "so utterly devoid of merit as to justify the imposition of a penalty." *Id.* (citing *Combustion Eng'g, Inc. v. Kennedy*, 562 S.W.2d 202, 205 (Tenn. 1978); *Jackson v. Aldridge*, 6 S.W.3d 501, 504 (Tenn. Ct. App. 1999)).  We exercise our discretion under this statute sparingly so as not to discourage legitimate appeals. *Id.*  In this case, we find it equitable to decline to award attorney's fees.

### V.    CONCLUSION

For the aforementioned reasons, we affirm the decision of the chancery court. Costs of this appeal are taxed to the appellant, William F. McNeal, and his surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.