**STATE v. NEWELL**

[189 N.C. App. 138 (2008)]

STATE OF NORTH CAROLINA, Plaintiff v. DAVID LESLIE NEWELL, Defendant

No. COA07-253

(Filed 4 March 2008)

### 1. Embezzlement— fiduciary relationship—criminal intent—evidence sufficient

The trial court did not err by denying defendant's motion to dismiss charges of embezzlement where defendant contended that the State failed to introduce substantial evidence that he was in an agency or fiduciary relationship with the victims, and that defendant acted with criminal intent.

### 2. Embezzlement— peremptory instruction—commingling funds—erroneous

The trial court erred in an embezzlement prosecution arising from leasing retail space to small vendors and serving as their sales agent where it essentially instructed the jury as a matter of law that defendant had acted with criminal intent if the vendors' receipts had been commingled with other corporate funds. The State was relieved of its obligation to prove criminal intent and the error was reversible as it was a close case, with a reasonable possibility that the jury would have found defendant not guilty without the instruction.

Appeal by defendant from judgments entered 12 May 2006 by Judge Dennis J. Winner in Buncombe County Superior Court. Heard in the Court of Appeals 18 October 2007.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Kathleen Mary Barry, for the State.*

*Nancy R. Gaines, for defendant-appellant.*

STROUD, Judge.

Defendant appeals from judgments entered upon jury verdicts finding him guilty of twenty-five counts of embezzlement. We conclude that the trial court erred when it peremptorily instructed the jury on the issue of intent. Accordingly, we grant defendant a new trial on all charges.

STATE v. NEWELL

[189 N.C. App. 138 (2008)]

## I. Background

Defendant owned and operated several businesses in Buncombe County. One of his businesses was called Interiors Marketplace. Through another of his businesses, Unity Marketing of Piedmont, Inc. ("Unity Marketing"), he contracted to lease retail space in Interiors Marketplace and serve as sales agent for a number of small vendors of crafts, art, antiques and other items ("vendors").[1] Each boilerplate contract was nominally a lease agreement but included provisions for both leased retail space and cash receipting services. In addition to promising retail space to each vendor in exchange for a fixed monthly payment, each contract provided that defendant's employees would operate a central service desk and receive payments from purchases of each vendor's goods in exchange for a ten percent commission. The receipts were to be credited to a bookkeeping account in each vendor's name and remitted by check, less the ten percent commission, to each individual vendor, along with a sales report, by the 15th of each month. The contracts specifically authorized defendant "to commingle and deposit receipts and payments for Tenant's sales in a common bank account" between receipt and remittance.

On the advice of defendant's accountant, the receipts from the vendors went into a common bank account with the other funds of Unity Marketing. In 2001 some of defendant's businesses experienced cash flow problems and the businesses, including Unity Marketing, transferred cash from one to another as inter-company loans. By 2004, the cash transfers occurred "almost daily." Defendant filed a voluntary petition for bankruptcy on 30 July 2004. On 7 September 2004, flooding caused Interiors Marketplace to cease operations. On 8 September 2004, Unity Marketing transferred $8,500.00 to Commercial Flooring of Carolina, Inc., one of defendant's businesses. The vendors were not paid the money collected on their behalf in August when it became due on 15 September 2004.

Some of the vendors pursued criminal charges, and the Buncombe County Grand Jury returned twenty-five true bills of indictment[2] on 12 September 2005 charging that defendant, in violation of N.C. Gen. Stat. § 14-90, did

---

1. The evidence tends to show that Unity Marketing was the *alter ego* of defendant, and defendant did not argue that the fact that the contracts were entered into by Unity Marketing rather than him personally should serve to shield him from criminal liability. *See, e.g., State v. Louchheim,* 296 N.C. 314, 329, 250 S.E.2d 630, 639-40, *cert. denied,* 444 U.S. 836, 62 L. Ed. 2d 47 (1979).

2. The trial court instructed the jury on twenty-six counts but the record contains only twenty-five indictments and twenty-five matching verdict sheets.

embezzle, fraudulently and knowingly misapply and convert to the defendant's own use, and take and make away with and secrete with the intent to embezzle and fraudulently misapply and convert to the defendant's own use U.S. Currency in the amount of [$ ___] belonging to [alleged victim]. At the time the defendant was over sixteen years of age and was an agent and fiduciary of [alleged victim], and in that capacity had been entrusted to receive the property described above and in that capacity the defendant had received and taken that property into the defendant's care and possession.

Defendant was tried before a jury from 8 to 12 May 2006 and found guilty on all twenty-five counts. The trial court sentenced defendant to active sentences of 60 and 44 days, suspended twelve consecutive sentences of 6 to 8 months subject to 60 months of supervised probation, and ordered defendant to pay restitution in the amount of $29,121.61. Defendant appeals.

## II. Motion to Dismiss

[1] On appeal, defendant contends that the trial court erred when it denied his motion to dismiss all of the charges against him. Defendant contends that the State did not introduce substantial evidence that defendant was in an agency or fiduciary relationship with the alleged victims, or evidence that defendant acted with criminal intent. We disagree.

N.C. Gen. Stat. § 15A-1227 (2005) allows a defendant to move to dismiss a criminal charge when the evidence is not sufficient to sustain a conviction. Evidence is sufficient to sustain a conviction when, viewed in the light most favorable to the State and giving the State every reasonable inference therefrom, there is substantial evidence to support a jury finding of each essential element of the offense charged, and of defendant's being the perpetrator of such offense. The denial of a motion to dismiss for insufficient evidence is a question of law, which this Court reviews *de novo*.

*State v. Bagley*, 183 N.C. App. 514, 522-23, 644 S.E.2d 615, 621 (2007) (internal citations and quotations omitted). The essential elements of embezzlement are:

(1) the defendant, older than 16, acted as an agent or fiduciary for his principal, (2) he received money or valuable property of his principal in the course of his employment and through his fidu-

ciary relationship, and (3) he fraudulently or knowingly and willfully misapplied or converted to his own use the money of his principal which he had received in a fiduciary capacity.

*State v. Britt*, 87 N.C. App. 152, 153, 360 S.E.2d 291, 292 (1987) (citation omitted), *cert. denied*, 321 N.C. 475, 364 S.E.2d. 924 (1988).

A. Fiduciary Relationship

Defendant relies on *In re Storms*, 28 B.R. 761 (Bankr. E.D.N.C. 1983) to argue that he was not in an agency or fiduciary relationship with the alleged victims. He argues that because (1) there was no express duty for defendant to segregate the funds received from the alleged victims, (2) none of the vendors ever inquired as to the segregation of funds, and (3) the relationship between defendant and the vendors was fairly informal, the State did not present substantial evidence of an agency or fiduciary relationship between defendant and the vendors.

We first note that *In re Storms* is a memorandum opinion in a bankruptcy case in which the trial court, *Storms* at 763, determined that the plaintiff had not established the existence of a fiduciary relationship with defendant by clear and convincing evidence. *Storms* at 765. *Storms* also expressly acknowledged that "the broader state law definition of 'fiduciary' . . . is not controlling in the [bankruptcy law] context." *Storms* at 764. For these reasons, *Storms* is neither controlling nor persuasive in determining whether the evidence viewed in the light most favorable to the State is substantial evidence of a fiduciary relationship between defendant and the vendors under North Carolina law.

In determining whether an agency or fiduciary relationship exists, "it is the terms of the relationship that are important and not how the relationship is designated. . . . The question which determines the nature of the relationship between the defendant and the [alleged victim] is the ownership of the money at the time it came into the hands of the defendant." *State v. McCaskill*, 47 N.C. App. 289, 292-93, 267 S.E.2d 331, 333, *cert. denied*, 301 N.C. 101, 273 S.E.2d 306 (1980). "An agent is one who, by the authority of another, undertakes to transact some business . . . and to render an account of it." *SNML Corp. v. Bank*, 41 N.C. App. 28, 36, 254 S.E.2d 274, 279, *disc. review denied*, 298 N.C. 204 (1979). An agreement to collect funds for a party, and remit those funds less a commission is sufficient to establish an agency relationship for purposes of N.C. Gen. Stat. § 14-90. *McCaskill*, 47 N.C. App. at 293, 267 S.E.2d at 333.

In the case *sub judice*, the State presented evidence that: Defendant entered into a contract with each vendor whereby he promised to collect receipts on their behalf and remit the money less a commission, with an accounting, on the 15th of each month. This is evidence that the tenants owned the money at the time it came into the hands of defendant. Furthermore, the contracts refer to defendant as "service agent" and the Operating Agreement incorporated into the contracts refers to defendant as a "non-exclusive [marketing] agent." While these terms are not dispositive by themselves, *McCaskill,* 47 N.C. App. at 292-93, 267 S.E.2d at 333, reading them in light of defendant's contractual duty to collect money for the sales of the vendors and remit it to them less a commission, and drawing all inferences in the State's favor, we conclude that the State presented substantial evidence of defendant's agency or fiduciary relationship with the vendors sufficient to survive a motion to dismiss on that element.

B. Criminal Intent

Even if the State offers proof of misapplication or conversion, it cannot survive the motion to dismiss without substantial evidence that defendant intended "to embezzle or otherwise willfully and corruptly use or misapply the property of the principal for purposes for which the property is not held." *Britt,* 87 N.C. App. at 153, 360 S.E.2d at 292. In short, the State must prove that defendant had criminal intent.

When a defendant receives money under an agency relationship and does not transmit it to the party to whom it is due, this is circumstantial evidence of intent. *McCaskill,* 47 N.C. at 293, 267 S.E.2d at 333 (finding substantial evidence of criminal intent where the State presented evidence that the defendant received money from the victim's customers which he was obligated to transmit to the victim after deducting a sales commission but did not transmit the money); *see also State v. Helsabeck,* 258 N.C. 107, 113-14, 128 S.E.2d 205, 209 (1962) (finding substantial evidence of criminal intent where the State presented evidence that victim paid the defendant monthly amounts which were to be forwarded to the mortgagee but the defendant wrote a worthless check to the mortgagee for the amounts); *State v. Rupe,* 109 N.C. App. 601, 609, 428 S.E.2d 480, 486 (1993) (finding substantial evidence of criminal intent where the State presented evidence that the defendant received refundable deposits but the money was not available when the victims requested refunds). Evidence that the defendant was experiencing personal

financial problems is also circumstantial evidence of intent. *State v. Barbour*, 43 N.C. App. 143, 150, 258 S.E.2d 475, 480 (1979).

The State presented evidence that defendant received money on behalf of the vendors and did not pay them when it was due. The State also presented evidence that defendant was experiencing personal financial problems. This evidence was sufficient to survive the motion to dismiss on the issue of intent.

### III. Jury Instructions

**[2]** Defendant contends that the trial court erred when it instructed the jury that (1) "the . . . leases . . . created an agency principal relationship," between defendant and the vendors, and (2) that the "leases agree that the vendors' receipts can be commingled together in one account, but there is no agreement that said receipts can be commingled with other funds of the corporation." Defendant contends that because these allegations were not established beyond a reasonable doubt by uncontradicted evidence, it was error for the trial court to peremptorily instruct the jury. We agree with defendant.

"Peremptory instructions are only rarely proper in criminal cases. Only when uncontradicted evidence clearly establishes a fact beyond a reasonable doubt is a peremptory instruction appropriate." *State v. Hamilton*, 77 N.C. App. 506, 514, 335 S.E.2d 506, 512 (1985), *disc. review denied*, 315 N.C. 593, 341 S.E.2d 33 (1986).

"If a contract is plain and unambiguous on its face the court may interpret it as a matter of law, but where it is ambiguous and the intention of the parties is unclear, interpretation of the contract is for the jury." *Glover v. First Union National Bank*, 109 N.C. App. 451, 456, 428 S.E.2d 206, 209 (1993). "An ambiguity exists where the terms of the contract are reasonably susceptible to either of the differing interpretations proffered by the parties." *Kimbrell v. Roberts*, 186 N.C. App. 68, 73, 650 S.E.2d 444, 447, *disc. review denied*, 362 N.C. 87, —— S.E.2d —— (2007). "The fact that a dispute has arisen as to the parties' interpretation of the contract is some indication that the language of the contract is, at best, ambiguous." *St. Paul Fire & Marine Ins. Co. v. Freeman-White Assoc., Inc.*, 322 N.C. 77, 83, 366 S.E.2d 480, 484 (1988).

The contract which defendant drafted and each of the vendors signed permitted defendant "to commingle and deposit receipts and payments for Tenant's sales in a common bank account." The trial court found this phrase to be plain and unambiguous and instructed

the jury accordingly. However, whether this phrase meant that the receipts had to be placed in a segregated bank account for only the vendors, and not commingled with the other funds of Unity Marketing or with the funds of other corporations which defendant owned, was contested by the State and defendant. Defendant's accountant testified that he did not believe that the contracts required "special handling" of the receipts from the vendors' sales. There is also some evidence that the vendors knew of defendant's practice of moving funds around, and that they did not object to it.

By its peremptory instruction, the trial court essentially instructed the jury as a matter of law that the receipts collected by defendant could not be commingled with other funds of the corporation. This instruction essentially declared that defendant had acted with criminal intent if the vendors' receipts had been commingled with other corporate funds, and thereby relieved the State of its obligation to prove the criminal intent of defendant beyond a reasonable doubt. This was error.

Having concluded that the trial court erred in instructing the jury, we now consider if the instruction "was reversible error which would entitle defendant to a new trial. Reversible error is present when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached." *State v. Graham*, 186 N.C. App. 182, 192, 650 S.E.2d 639, 646-47 (2007) (internal citations and quotation marks omitted).

This was a close case. There was substantial evidence from which the jury could have found defendant acted with criminal intent, as discussed in Part II. B., *supra,* but also substantial evidence from which the jury could have found that defendant did not act with criminal intent, such as the accountant's testimony and the vendor's knowledge and silent acquiescence to defendant's business practice. The jury should have been allowed to weigh this evidence for itself. We conclude that if the trial court had not peremptorily instructed the jury that commingling the funds was criminal intent *per se*, there was a reasonable possibility that the jury would have found defendant not guilty. This error is therefore reversible, and defendant is entitled to a new trial on all charges.

## IV. Conclusion

For the foregoing reasons, we conclude that the trial court did not err when it denied defendant's motion to dismiss the embezzlement charges against him. However, because we conclude that the

trial court committed reversible error when it essentially instructed the jury that the vendors' receipts could not be commingled with other corporate funds as a matter of law, we grant defendant a new trial on all charges. Because we grant defendant a new trial on this assignment of error, we need not consider defendant's other assignments of error as this is not likely to arise at a new trial.

NEW TRIAL.

Judges McCULLOUGH and TYSON concur.