IN THE COURT OF APPEALS OF NORTH CAROLINA

 2022-NCCOA-39

 No. COA20-894

 Filed 18 January 2022

 Pamlico County, Nos. 19 CRS 66–67

 STATE OF NORTH CAROLINA

 v.

 THOMAS WAYNE STEELE

 Appeal by defendant from judgments entered 31 January 2020 by Judge John

 E. Nobles, Jr., in Pamlico County Superior Court. Heard in the Court of Appeals 19

 October 2021.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General Amy
 Kunstling Irene, for the State.

 Tin Fulton Walker & Owen, PLLC, by Noell P. Tin, for defendant-appellant.

 ZACHARY, Judge.

¶1 Defendant Thomas Wayne Steele appeals from judgments entered upon a

 jury’s verdicts finding him guilty of one count of embezzlement and four counts of

 exploitation of an older adult. On appeal, Defendant contends that the trial court

 erred by (1) denying his motion to dismiss the embezzlement charge for insufficient

 evidence, and (2) declining to give Defendant’s proposed special jury instruction. After

 careful review, we conclude that Defendant received a fair trial, free from prejudicial

 error.
 STATE V. STEELE

 2022-NCCOA-39

 Opinion of the Court

 Background

¶2 Defendant first met Lillie Monk and her late husband, Pastor Mike Monk, Jr.,

 in 1985. They became very close, eventually considering themselves family;

 Defendant called Mrs. Monk and Pastor Monk “Mom” and “Dad,” and the Monks

 referred to Defendant as their “son.” On 28 March 2015, Pastor Monk passed away

 unexpectedly. Defendant, who was also a pastor, delivered the eulogy at Pastor

 Monk’s funeral.

¶3 Mrs. Monk struggled to return to her daily life. She testified that her husband’s

 death “almost took [her] out[,]” and she felt like she “couldn’t make it without him[.]”

 Mrs. Monk’s family was concerned about her because she was so “grief-stricken” and

 “distraught.”

¶4 Following the funeral, Mrs. Monk visited Defendant and his wife for a week in

 their home in Concord, North Carolina, against her family’s advice. Over the next few

 months, she stayed with Defendant and his wife periodically. Defendant told Mrs.

 Monk that “he was there to help” her. Mrs. Monk testified at trial that she “thought

 [Defendant] was a man of God” who “loved [her]” and was “going to take care of [her.]”

 Mrs. Monk had little experience managing the household finances, as that had been

 her husband’s responsibility throughout their marriage. Because she trusted

 Defendant and thought of him as family, Mrs. Monk “just turned everything”—
 STATE V. STEELE

 2022-NCCOA-39

 Opinion of the Court

 including the keys to her home and post office box—over to Defendant after Pastor

 Monk’s death.

¶5 On 16 April 2015, less than a month after her husband’s death, Mrs. Monk

 added Defendant as joint holder on her State Employees’ Credit Union (SECU)

 savings and money-market accounts. She also redeemed over $146,000 in savings

 bonds and deposited that money into the joint money-market account. That same day,

 Mrs. Monk added Defendant as a joint holder on her First Citizens Bank accounts as

 well. In addition, at some point, Defendant linked his personal SECU accounts to

 Mrs. Monk’s SECU accounts, with the effect that any overdrafts on Defendant’s

 personal SECU account would be paid from the joint SECU accounts funded with

 Mrs. Monk’s money.

¶6 Shortly thereafter, on 12 June 2015, Defendant drove Mrs. Monk to an

 attorney’s office. Mrs. Monk testified that at Defendant’s behest, she executed a

 power of attorney naming Defendant as her attorney-in-fact. She also executed a will,

 naming Defendant to serve as her executor and leaving the majority of her estate to

 him.

¶7 A few months later, on 4 September 2015, funds were withdrawn from the joint

 First Citizens accounts and used to fund two bank accounts at Wells Fargo Bank.

 Mrs. Monk and Defendant were named as joint holders of the new Wells Fargo

 accounts. There was conflicting evidence as to who opened the Wells Fargo accounts.
 STATE V. STEELE

 2022-NCCOA-39

 Opinion of the Court

 Defendant testified that Mrs. Monk agreed to open these joint accounts. Mrs. Monk

 testified that the signatures on the applications for the two Wells Fargo accounts did

 not look like her handwriting; that she did not give Defendant permission to open the

 Wells Fargo accounts; and that she “didn’t know what was going on” with the Wells

 Fargo accounts because Defendant “took over.”

¶8 Concerned that Defendant was committing financial crimes against Mrs.

 Monk, her brother contacted the Pamlico County Sheriff’s Office, which transferred

 the case to Agent Kevin Snead at the State Bureau of Investigation. On 22 April 2019,

 a Pamlico County grand jury returned indictments charging Defendant with four

 counts of exploitation of an older adult and one count of embezzlement of $100,000 or

 more. On 21 October 2019, a Pamlico County grand jury returned a superseding

 indictment amending the range of dates alleged for one of the charges of exploitation

 of an older adult.

¶9 On 28 January 2020, this matter was called for trial in Pamlico County

 Superior Court, the Honorable John E. Nobles, Jr., presiding. At trial, SBI Agent

 Snead testified that Defendant obtained a total of $123,367.09 from the accounts that

 he held with Mrs. Monk.

¶ 10 Agent Snead explained that, because Defendant linked his personal SECU

 checking account to Mrs. Monk’s now jointly held SECU accounts, SECU transferred

 $21,350 from the joint money-market account to Defendant’s personal checking
 STATE V. STEELE

 2022-NCCOA-39

 Opinion of the Court

 account to cover his overdrafts between 11 August 2015 and 11 May 2016. He also

 testified that Defendant used $102,017 of Mrs. Monk’s money from the jointly-held

 SECU, Wells Fargo, and First Citizens accounts for his benefit, including $15,000 for

 a down payment on a Ford truck titled to Defendant; $6,000 in contributions to his

 IRA; $4,850 for repairs to his Mercedes; $8,000 in payments on his credit card

 account; and $25,250 in cash withdrawals.

¶ 11 Defendant testified that the money in the joint accounts belonged to Mrs.

 Monk, stating, “it was her money—her accounts, her money. I was there to help her.

 It wasn’t about me.” He maintained that he had “no idea” that SECU was transferring

 money from the SECU accounts that he held with Mrs. Monk to cover overdrafts from

 his personal checking account, because he had not reviewed the SECU statements

 and instead “just stuck them in a drawer.” Defendant also testified that Mrs. Monk

 asked him to recruit a new pastor for Pastor Monk’s church and agreed to fund that

 project, and that he withdrew money from the accounts as she requested. However,

 Defendant conceded that he suffered from financial difficulties. Although his annual

 salary was $80,000, he had to pay the IRS “a bunch of money back” at one time and

 had struggled with his finances and bookkeeping.

¶ 12 Mrs. Monk testified that, although she “just turned everything over” to

 Defendant after her husband’s death, she never authorized Defendant to link his

 personal SECU checking account to any joint account in order to cover his overdrafts,
 STATE V. STEELE

 2022-NCCOA-39

 Opinion of the Court

 never gave Defendant permission to withdraw money from the joint accounts for his

 personal use, and never requested that Defendant find a new pastor for the church.

 She also stated that she never gave Defendant permission to use her money to

 purchase a new truck or to fix his Mercedes.

¶ 13 At the close of the State’s evidence, Defendant moved to dismiss the

 embezzlement charge due to insufficient evidence, and he renewed the motion at the

 close of all evidence. The trial court denied the motion both times.

¶ 14 At the charge conference, Defendant submitted a written request for the

 following special jury instruction with regard to the embezzlement charge:

 Pursuant to NC law, NCGS [§] 54C-165, Any two or more
 persons may open or hold a withdrawable account or
 accounts. The withdrawable account and any balance of the
 account is held by them as joint tenants. You should
 consider this as well as all other evidence as you evaluate
 whether the State has proven its case beyond a reasonable
 doubt.

¶ 15 Defense counsel argued that the proposed special instruction was necessary

 because “if the jury finds that [Defendant] was lawfully on the joint accounts,

 meaning that there was no deception involved, then he would have been entitled to

 use those funds regardless.” The trial court denied Defendant’s request on the

 grounds that the special instruction was likely to confuse the jury.

¶ 16 On 31 January 2020, the jury returned its verdicts finding Defendant guilty of

 all charges. The trial court sentenced Defendant to 6-17 months for three of the four
 STATE V. STEELE

 2022-NCCOA-39

 Opinion of the Court

 counts of exploitation of an older adult and an additional 13-25 months for the fourth

 count, with the sentences to run consecutively in the custody of the North Carolina

 Division of Adult Correction. The court also sentenced Defendant to 73-100 months

 for the embezzlement conviction, to run concurrently with Defendant’s other

 sentences. In addition, the court ordered Defendant to pay $123,367.09 in restitution

 to Mrs. Monk. Defendant entered oral notice of appeal in open court.

 Discussion

¶ 17 On appeal, Defendant argues that the trial court erred by (1) denying his

 motion to dismiss the embezzlement charge, and (2) declining to deliver his requested

 special jury instruction. We disagree.

 I. Motion to Dismiss

¶ 18 Defendant contends that the trial court erred in denying his motion to dismiss

 because the State presented insufficient evidence that (1) he had a fiduciary

 relationship with Mrs. Monk when he converted the funds to his use; (2) he

 wrongfully converted Mrs. Monk’s money to his own use, when he was entitled to the

 funds in the bank accounts as a joint holder; and (3) Defendant embezzled at least

 $100,000.

 A. Standard of Review

¶ 19 We review the denial of a motion to dismiss based on an insufficiency of

 evidence de novo. State v. Parker, 233 N.C. App. 577, 579, 756 S.E.2d 122, 124 (2014).
 STATE V. STEELE

 2022-NCCOA-39

 Opinion of the Court

¶ 20 “A motion to dismiss is properly denied where there is substantial evidence of

 each element of the offense charged and of [the] defendant being the perpetrator of

 that offense.” Id. “Substantial evidence is such relevant evidence as a reasonable

 mind might accept as adequate to support a conclusion.” Id. (citation and internal

 quotation marks omitted). The evidence “should be viewed in the light most favorable

 to the State, giving the State the benefit of every reasonable inference to be drawn

 therefrom. Where the State offers substantial evidence of each essential element of

 the crime charged, [the] defendant’s motion to dismiss must be denied.” Id. (citation

 omitted).

 B. Embezzlement

¶ 21 The felony offense of embezzlement applies to any person “[w]ho is a guardian,

 administrator, executor, trustee, or any receiver, or any other fiduciary[.]” N.C. Gen.

 Stat. § 14-90(a)(3) (2019). Our embezzlement statute also provides that:

 (b) Any [fiduciary] who shall:

 (1) Embezzle or fraudulently or knowingly and willfully
 misapply or convert to his own use, or

 (2) Take, make away with or secrete, with intent to
 embezzle or fraudulently or knowingly and willfully
 misapply or convert to his own use,

 any money, goods or other chattels, bank note, check or
 order for the payment of money issued by or drawn on any
 bank or other corporation, or any treasury warrant,
 treasury note, bond or obligation for the payment of money
 issued by the United States or by any state, or any other
 STATE V. STEELE

 2022-NCCOA-39

 Opinion of the Court

 valuable security whatsoever that . . . belongs to any other
 person or corporation, unincorporated association or
 organization . . . , which shall have come into his possession
 or under his care, shall be guilty of a felony.

 Id. § 14-90(b). In short, “to constitute embezzlement, the property in question initially

 must be acquired lawfully, pursuant to a trust relationship, and then wrongfully

 converted.” State v. Speckman, 326 N.C. 576, 578, 391 S.E.2d 165, 166 (1990). If the

 value of the property embezzled is $100,000 or more, the offense constitutes a Class

 C felony. N.C. Gen. Stat. § 14-90(c).

 C. Fiduciary Relationship

¶ 22 Defendant first argues that the trial court erred in denying his motion to

 dismiss because the State presented insufficient evidence that a fiduciary

 relationship existed between himself and Mrs. Monk. Specifically, Defendant

 contends that “[n]o such relationship existed . . . until the power of attorney was

 executed on June 12, 2015, approximately two months after [Defendant] came into

 possession of the funds in Mrs. Monk’s bank accounts[.]” We disagree.

¶ 23 It is axiomatic that “[t]he relationship created by a power of attorney between

 the principal and the attorney-in-fact is fiduciary in nature[.]” Albert v. Cowart, 219

 N.C. App. 546, 554, 727 S.E.2d 564, 570 (2012). However, a fiduciary relationship

 may arise “under a variety of circumstances; it exists in all cases where there has

 been a special confidence reposed in one who in equity and good conscience is bound
 STATE V. STEELE

 2022-NCCOA-39

 Opinion of the Court

 to act in good faith and with due regard to the interests of the one reposing

 confidence.” State v. Seay, 44 N.C. App. 301, 307, 260 S.E.2d 786, 789 (1979) (citation

 omitted), appeal dismissed and disc. rev. denied, 299 N.C. 333, 265 S.E.2d 401, cert.

 denied, 449 U.S. 826, 66 L. Ed. 2d 29 (1980). Indeed, as this Court explained in State

 v. Newell:

 In determining whether an agency or fiduciary
 relationship exists, it is the terms of the relationship that
 are important and not how the relationship is designated.
 The question which determines the nature of the
 relationship between the defendant and the alleged victim
 is the ownership of the money at the time it came into the
 hands of the defendant.

 189 N.C. App. 138, 141, 657 S.E.2d 400, 403 (2008) (citation and internal quotation

 marks omitted).

¶ 24 Here, Defendant concedes that he acted as Mrs. Monk’s fiduciary after she

 executed the power of attorney naming Defendant as her attorney-in-fact.

 Nevertheless, the evidence sufficiently established that a fiduciary relationship

 existed between Defendant and Mrs. Monk prior to that point, when he “came into

 possession of the funds in Mrs. Monk’s bank accounts[.]” The parties’ relationship

 was certainly one of special confidence and trust: Defendant called Mrs. Monk “Mom,”

 and she called him “son.” Mrs. Monk “thought he was a man of God” who “loved” and

 was “going to take care of” her. Defendant told Mrs. Monk that “he was there to help”

 her. Only a few weeks after her husband’s funeral, Mrs. Monk granted Defendant
 STATE V. STEELE

 2022-NCCOA-39

 Opinion of the Court

 access to her accounts in reliance on Defendant’s promise to “take care of” her. She

 “turned everything over” to Defendant—including the keys to her home and post

 office box.

¶ 25 Mrs. Monk clearly granted Defendant access to the funds in her bank accounts

 “pursuant to a trust relationship[.]” Speckman, 326 N.C. at 578, 391 S.E.2d at 166.

 Because Defendant and Mrs. Monk had a relationship of trust, and because “it is the

 terms of the relationship that are important and not how the relationship is

 designated[,]” Newell, 189 N.C. App. at 141, 657 S.E.2d at 403 (citation omitted), we

 conclude that there was sufficient evidence that Defendant was acting as Mrs. Monk’s

 fiduciary when he gained access to her money.

 D. Joint Ownership of Bank Accounts

¶ 26 Defendant next argues that the trial court erred in denying his motion to

 dismiss because there was insufficient evidence that Defendant wrongfully converted

 Mrs. Monk’s money to his own use, in that “[a]s a holder of the [joint] accounts, [he]

 was entitled to the balance of the [joint] accounts” that he held with Mrs. Monk.

 Again, we disagree.

¶ 27 In support of his theory of the case, Defendant relies on N.C. Gen. Stat. § 54C-

 165(a), which provides, inter alia:

 Any two or more persons may open or hold a withdrawable
 account or accounts. The withdrawable account and any
 balance of the account is held by them as joint tenants, with
 STATE V. STEELE

 2022-NCCOA-39

 Opinion of the Court

 or without right of survivorship, as the contract shall
 provide. . . . Unless the persons establishing the account
 have agreed with the savings bank that withdrawals
 require more than one signature, payment by the savings
 bank to, or on the order of, any persons holding an account
 authorized by this section is a total discharge of the savings
 bank’s obligation as to the amount so paid.

 N.C. Gen. Stat. § 54C-165(a).

¶ 28 Defendant interprets this statute as granting joint ownership of the funds

 deposited into the accounts by virtue of his being named a joint holder. Consequently,

 Defendant maintains that as a joint holder of the accounts, he was an owner of the

 funds, and thus, he could not be prosecuted for unlawful withdrawal and use of the

 funds. This contention is without merit.

¶ 29 Although § 54C-165 governs savings banks, it is essentially the same as § 53C-

 6-6 (formerly § 53-146, governing banks) and § 54-109.58 (governing credit unions).

 See id. §§ 53C-6-6(f); 54-109.58(f); 54C-165(a). These statutes simply provide, in sum,

 that the financial institution “may safely pay either of the two persons.” O’Brien v.

 Reece, 45 N.C. App. 610, 617, 263 S.E.2d 817, 821 (1980). It is well established that

 these statutes are “for the protection of the [financial institution] only, and absent

 any other evidence, [are] not dispositive as to the ownership of funds.” Id.

¶ 30 It is true that “[t]he ownership of funds in a bank account is presumed to belong

 to or be owned by the person(s) named on the account.” Mut. Cmty. Sav. Bank, S.S.B.

 v. Boyd, 125 N.C. App. 118, 122, 479 S.E.2d 491, 493 (1997). Nevertheless, where
 STATE V. STEELE

 2022-NCCOA-39

 Opinion of the Court

 ownership is disputed, the presumption may be rebutted with evidence of the “facts

 surrounding the creation and history of the account, the source of the funds, the

 intent of the depositor[,] the nature of the bank’s transactions with the parties, and

 whether the owner of the monies . . . intended to make a gift to the person named[.]”

 Id. at 122, 479 S.E.2d at 494 (citations omitted). “The depositor is . . . deemed to be

 the owner of the funds.” Myers v. Myers, 68 N.C. App. 177, 181, 314 S.E.2d 809, 812

 (1984) (concluding that husband’s unauthorized removal and use of funds deposited

 by wife in a joint checking account supported a claim of conversion). “[A] deposit by

 one party into an account in the names of both, standing alone, does not constitute a

 gift to the other. In order for the exchange of property to constitute a gift, there must

 be donative intent coupled with loss of dominion over the property.” Hutchins v.

 Dowell, 138 N.C. App. 673, 678, 531 S.E.2d 900, 903 (2000). The intent of the parties

 controls when ownership is disputed. McAulliffe v. Wilson, 41 N.C. App. 117, 120, 254

 S.E.2d 547, 549 (1979).

¶ 31 In the instant case, it is undisputed that Mrs. Monk, alone, funded the joint

 accounts. Indeed, Defendant testified that all of the money in the accounts “was [Mrs.

 Monk’s] money.” Thus, Mrs. Monk, as the depositor, was “still deemed to be the owner

 of the funds.” Myers, 68 N.C. App. at 181, 314 S.E.2d at 812.

¶ 32 Moreover, there was ample evidence that Mrs. Monk did not intend to make a

 gift to Defendant of $123,367.09, the total amount of funds that Defendant was
 STATE V. STEELE

 2022-NCCOA-39

 Opinion of the Court

 eventually convicted of embezzling from her. Mrs. Monk testified that she did not give

 Defendant permission to use the funds for his personal expenses, nor did she gift him

 the money. Although there was contrary evidence presented at trial—Defendant

 testified that Mrs. Monk did, in fact, authorize his particular use of the funds—in

 reviewing the denial of a motion to dismiss, we nonetheless must “view [the evidence]

 in the light most favorable to the State, giving the State the benefit of every

 reasonable inference to be drawn therefrom.” Parker, 233 N.C. App. at 579, 756

 S.E.2d at 124.

¶ 33 We conclude that there was sufficient evidence that the funds taken were the

 property of Mrs. Monk, and that she did not have the requisite “donative intent” to

 grant Defendant the money to withdraw and use for his personal benefit. Hutchins,

 138 N.C. App. at 678, 531 S.E.2d at 903. Thus, Defendant was not entitled to convert

 the money to his use without her permission.

 E. Amount Embezzled

¶ 34 Defendant also contends that the State presented insufficient evidence that

 the amount of money he embezzled was $100,000 or more—thus elevating the offense

 to a Class C felony—because: (1) less than $100,000 was taken while Defendant acted

 as a fiduciary to Mrs. Monk; and (2) Defendant did not have the requisite intent to

 embezzle the overdraft fees, and therefore, the amount of money embezzled was less

 than $100,000. We disagree with both contentions.
 STATE V. STEELE

 2022-NCCOA-39

 Opinion of the Court

¶ 35 Defendant first argues that the trial court erred in denying his motion to

 dismiss the Class C embezzlement charge, because there was insufficient evidence

 that Defendant was acting as a fiduciary when he converted $100,000 or more of Mrs.

 Monk’s funds to his personal use. As explained above, there was sufficient evidence

 that Defendant was acting as Mrs. Monk’s fiduciary prior to his appointment as her

 attorney-in-fact. The wrongful conversion of $123,367.09 occurred while Defendant

 acted as a fiduciary. Accordingly, this argument fails.

¶ 36 Second, Defendant maintains that there was insufficient evidence that he had

 the requisite intent to wrongfully convert $21,350 in transfers from a joint account in

 order to cover overdraft fees in his personal checking account. Defendant asserts that

 “[t]here was no evidence that [he] initiated or knowingly allowed those transfers, nor

 was there evidence that [he] was aware of those transfers when they occurred” or that

 “he knowingly linked the joint account to his personal account” with the intent of

 instituting the overdraft transfers.

¶ 37 “The fraudulent intent required [for the offense of embezzlement] is the intent

 to willfully or corruptly use or misapply the property of another for purposes other

 than those for which the agent or fiduciary received it[.]” State v. Rupe, 109 N.C. App.

 601, 609, 428 S.E.2d 480, 486 (1993). “When a defendant receives money under an

 agency relationship and does not transmit it to the party to whom it is due, this is

 circumstantial evidence of intent. Evidence that the defendant was experiencing
 STATE V. STEELE

 2022-NCCOA-39

 Opinion of the Court

 personal financial problems is also circumstantial evidence of intent.” Newell, 189

 N.C. App. at 142–43, 657 S.E.2d at 404 (citations omitted).

¶ 38 Here, there was sufficient evidence of Defendant’s fraudulent intent to

 embezzle $21,350 in overdraft fees from Mrs. Monk. Although Defendant denied

 linking the accounts or knowing that his personal checking account overdrafts were

 being covered with funds from a joint account, the $21,350 in overdraft fees

 constituted more than a quarter of his approximately $80,000 annual salary, and

 Defendant admitted receiving SECU statements for that account. Moreover,

 transfers from the joint account covered Defendant’s personal overdrafts for many

 months, from August 2015 to May 2016, with each month’s statements providing

 Defendant with additional notice of the transfers. Defendant also testified that he

 was experiencing money problems, as he struggled with his finances and

 bookkeeping, and had to pay the IRS “a bunch of money back” at one time.

¶ 39 The evidence was sufficient to support that Defendant embezzled $100,000 or

 more from Mrs. Monk. Accordingly, the trial court did not err in denying Defendant’s

 motion to dismiss the charge of embezzlement.

 II. Special Jury Instruction

¶ 40 Finally, Defendant argues on appeal that the trial court erred in declining to

 give his requested special jury instruction that “if the jury found that he was lawfully

 named on the joint bank accounts with [Mrs.] Monk, then he would be entitled to use
 STATE V. STEELE

 2022-NCCOA-39

 Opinion of the Court

 the funds in the accounts[.]” A review of the record, however, reveals that Defendant’s

 requested special instruction was in fact a brief summary of N.C. Gen. Stat. § 54C-

 165; counsel had intended to use this statute to argue that Defendant was not guilty

 of the embezzlement charge. We conclude that the trial court did not err in denying

 Defendant’s request for this special instruction.

 A. Standard of Review

¶ 41 A trial court should give a specific jury instruction when “(1) the requested

 instruction [i]s a correct statement of law and (2) [i]s supported by the evidence, and

 . . . (3) the [pattern jury] instruction . . . , considered in its entirety, fail[s] to

 encompass the substance of the law requested and (4) such failure likely misle[ads]

 the jury.” State v. Oxendine, 242 N.C. App. 216, 219, 775 S.E.2d 19, 21–22 (2015)

 (citation omitted). “Where the request for a specific instruction raises a question of

 law,” this Court reviews de novo “the trial court’s decisions regarding jury

 instructions[.]” State v. Palmer, 273 N.C. App. 169, 171, 847 S.E.2d 449, 451 (2020).

 “Failure to give a requested and appropriate jury instruction is reversible error if the

 requesting party is prejudiced as a result of the omission.” State v. Guerrero, 2021-

 NCCOA-457, ¶ 9 (citation omitted).

 B. Discussion

¶ 42 During the charge conference, Defendant requested that the trial court

 instruct the jury that:
 STATE V. STEELE

 2022-NCCOA-39

 Opinion of the Court

 Pursuant to NC law, NCGS [§] 54C-165, Any two or more
 persons may open or hold a withdrawable account or
 accounts. The withdrawable account and any balance of the
 account is held by them as joint tenants. You should
 consider this as well as all other evidence as you evaluate
 whether the State has proven its case beyond a reasonable
 doubt.

 Defendant requested this special instruction in the hopes of arguing to the jurors that

 if they found that Defendant “was lawfully on the joint accounts, meaning that there

 was no deception involved,” then they should also find that “he would have been

 entitled to use those funds regardless.”

¶ 43 Defendant’s requested special instruction is a correct statement of law insofar

 as “[a]ny two or more persons may open or hold a withdrawable account or accounts.

 The withdrawable account and any balance of the account is held by them as joint

 tenants[.]” N.C. Gen. Stat. § 54C-165(a). It does not, however, accurately negate any

 element of the offense of embezzlement; Defendant was not entitled to spend the

 funds because he was a joint holder of the accounts. Consequently, the trial court

 correctly concluded that such an instruction would have been confusing to the jury.

¶ 44 As we addressed above, N.C. Gen. Stat. § 54C-165 and its related statutes,

 §§ 53C-6-6 and 54-109.58, are “for the protection of the bank only, and absent any

 other evidence, [are] not dispositive as to the ownership of funds.” O’Brien, 45 N.C.

 App. at 617, 263 S.E.2d at 821 (emphases added). Furthermore, Defendant admitted

 at trial that all of the money in the joint accounts belonged to Mrs. Monk: “[I]t was
 STATE V. STEELE

 2022-NCCOA-39

 Opinion of the Court

 her money—her accounts, her money. I was there to help her. It wasn’t about me.”

 Mrs. Monk testified that she granted Defendant joint access so that he could “take

 care of [her].”

¶ 45 Additionally, Defendant can show no prejudice from the trial court’s refusal to

 give the requested special instruction. Indeed, the requested instruction actually

 supports an element of the offense of embezzlement—that Defendant had lawful

 access to the funds. See N.C. Gen. Stat. § 14-90; Speckman, 326 N.C. at 578, 391

 S.E.2d at 166. Thus, there is no reasonable possibility that, had the trial court given

 the requested special instruction, the jury would have reached a different result at

 trial. Moreover, it is evident upon review that the trial court appropriately instructed

 the jury.

¶ 46 Because the requested special instruction could have misled the jury and was

 likely to create an inference unsupported by the law and the record—that Defendant’s

 lawful access to the funds in the joint accounts entitled him to freely spend the money

 therein—the trial court properly declined to deliver Defendant’s requested special

 jury instruction. See Guerrero, 2021-NCCOA-457 at ¶ 9.

 Conclusion

¶ 47 For the foregoing reasons, we conclude that the trial court did not err in

 denying Defendant’s motion to dismiss the embezzlement charge, nor in refusing to

 deliver Defendant’s requested special jury instruction.
 STATE V. STEELE

 2022-NCCOA-39

 Opinion of the Court

NO ERROR.

Judges MURPHY and COLLINS concur.